In re AMERICAN SUGAR REFINING CO.

(Circuit Court, S. D. New York. April 4, 1910.)

1. GRAND JURY (§ 36*)—WITNESSES—SUBPŒNA DUCES TECUM—REASONABLENESS.

A subpœna duces tecum, directing a corporation to appear before a federal grand inquest and produce a large quantity of contracts, mortgages, leases, agreements, correspondence, etc., and to testify generally with reference to alleged acts in violation of Act Cong. July 2, 1890, c. 647, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200), to protect trade against unlawful restraint and monopolies, etc., held fatally defective as unreasonable.

[Ed. Note.—For other cases, see Grand Jury, Dec. Dig. § 36.*]

2. WITNESSES (§ 300*)—CORPORATIONS—SUBPŒNA DUCES TECUM—PRIVILEGE.

A corporation, when subpœnaed duces tecum to produce its books before a grand jury, cannot avail itself of the privilege of a witness under Const. U. S. Amend. 5, declaring that no person shall be compelled in a criminal case to be a witness against himself.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1402, 1402½; Dec. Dig. § 300.*]

3. GRAND JURY (§ 36*)—PROCEEDINGS—WITNESSES—SUBPŒNA DUCES TECUM.

A subpœna duces tecum may be properly directed to a corporation requiring it to produce its books for examination before a grand jury; the writ being complied with when the books have been presented in actual grand jury session and are taken away again by the messenger of the corporation as soon as the particular session adjourns, they remaining with the grand jury during the session.

[Ed. Note.—For other cases, see Grand Jury, Dec. Dig. § 36.*]

Motion by Henry A. Wise, United States Attorney, to punish the American Sugar Refining Company for failing to obey a subpœna duces tecum. Denied.

The following is a substantial copy of the subpœna duces tecum requiring defendant to produce:

A mortgage made to the Central Trust Company of New York to secure bonds of $10,-000,000 made January 10, 1891; also a contract or contracts between the American Sugar Refining Company and each of the constituent companies, guaranteeing debts of said companies, made January, 1891; also an agreement, dated April 2, 1891, between the American Sugar Refining Company and Claus Doscher, Henry Offerman, and Julius A. Stursberg, trustees; also a deed, or copy thereof, from the American Sugar Refining Company of California to Havemeyers and Elder of the sugar refinery property in San Francisco, dated March 21, 1889; also a lease by Havemeyers and Elder to the Western Sugar Refining Company, dated March 24, 1891, of the sugar refinery property in San Francisco; also an agreement made April, 1891, between the American Sugar Refining Company and Havemeyers and Elder, by which the said company assumed debts of the said Havemeyers and Elder; also a "reorganization agreement" of the American Sugar Refining Company, referred to in report to the stockholders of said company of January, 13, 1892; also a form of offer or original offer made by the American Sugar Refining Company, or any of its officers, for the purchase of the Franklin Sugar Refining Company; also a form of statement or statement made by the board of directors of said company, accompanying dividend declared December 5, 1894; also an agreement between American Sugar Refining Company and Southern Pacific Company, dated April 2, 1895; also a form of or original copy of agent's agreement and letter referred to in minutes of meeting of said board on September 18, 1895; also an agreement, made on or about April 1, 1897, with John D. Spreckels, for the purchase by the American Sugar Refining Company of an interest in Western Beet Sugar Company, in Pajaro Valley Railroad, and in land near Salinas; also an agreement between the American Sugar Refining Company and the New York, New Haven & Hartford Railroad Company, made on or about February, 1899; also contracts with the Hawaiian planters, made on or about December, 1902; also an agreement between the American Sugar Refining Company and Lowell M. Palmer and others, made on or about April, 1902; also a lease from the California Sugar Refining Company to the Western Sugar Refining Company, made on or about December, 1902; also a bond, or copy thereof, executed by the American Sugar Refining Company to the "Longmont people," made on or about December, 1902, and all agreements incidental thereto; also a lease by American Sugar Refining Company to the Western Sugar Refining Company of the refinery property in San Francisco, and lease supplemental thereto, made on or about February, 1905; agreement looking to the incorporation of the Great Western Sugar Company, made on or about November, 1903; also all contracts between American Sugar Refining Company, American Coffee Company, and Herman Sielcken, made May 28, 1909; a___ contracts for beet sugar between the Western Sugar Refining Company and the Western Beet and Chino Companies for 1895; also all contracts with Western Sugar Refining Company, Watsonville Beet Sugar Company, and Chino Beet Sugar Company; also the correspondence in the matter of the Camden Refinery; also the communications from Western Refining Company to American Sugar Refining Company, dated July 28, 1898; also the contracts with Western Sugar Refining Company with reference to Hawaiian sugars, made in 1899, and also similar contracts; also a lease of the California Sugar Refinery to the Western Sugar Refining Company, made on or about June, 1901; also a contract with Patrick J. Cavanaugh and others, made on or about January, 1903; also an agency agreement between American Sugar Refining Company and Alameda Sugar Company, made on or about March, 1903; also letter of Thomas R. Cutler, dated July 18, 1903, and a copy of the answers to said letter; also an agreement between the American Sugar Refining Company and the Sugar Syndicate of Mexico, made on or about December, 1903; also a lease of California Refinery to the Western Sugar Refining Company for five years from September 30, 1907; also a contract between American Sugar Refining Company and A. B. Foster, for sale of stock of the Great Western Sugar Company, made on or about January, 1905; also a letter of W. H. Hannam to H. O. Havemeyer, dated February 24, 1905; also a lease, or copy thereof, dated March, 1905, of California Sugar Company and Western Sugar Refining Company; also a letter of C. S. Morey to American Sugar Refining Company, or some of its officers, dated April 25, 1905; also the correspondence between H. R. Duval and Henry O. Havemeyer, in regard to Las Animas factory; also a communication from Thomas R. Cutler as to consolidation of Utah and Idaho Sugar Companies; also a lease to the Western Sugar Refining Company in March, 1908; also a letter from C. C. Higgins, referred to in minutes of a meeting of said committee on June 24, 1908, and letter from John E. Parsons on same subject; also a contract with Sugar Factors Company, Limited, of Hawaii in July, 1910; also all agreements and other instruments by or to the American Sugar Refining Company, or any officer thereof, with all other persons and corporations in and about the purchase by said company of the stock of the Franklin Sugar Refining Company, the Spreckels Sugar Refining Company, the E. C. Knight Company, and the Delaware Sugar House, made in 1892; also all agreements and other instruments made by or to the American Sugar Refining Company, or any officer thereof, with any other person or corporation in and about the purchase by said company of stock in any of certain named corporations from January 1, 1902, to January 1, 1906, in and about the sale of sugar produced by said companies, or any of them.

James M. Beck, for American Sugar Refining Co.
Henry A. Wise, U. S. Atty.

LACOMBE, Circuit Judge. The motion made by the United States attorney to punish the company for contempt in failing to obey a subpœna duces tecum. requiring it to produce certain books and papers before the grand jury, is denied for the reason that the subpœna is obnoxious to the criticism which was sustained by the Supreme Court in Hale v. Hendel, 201 U. S. 43, 26 Sup. Ct. 370, 50 L. Ed. 652—it is "far too sweeping in its terms to be regarded as reasonable."

The corporation moves to set aside the second subpœna, directed to it, served on its president and resident agent, and which is restricted to two specified books.

Considering the arguments in support of the motion, this court remains of the opinion enunciated in U. S. v. American Tobacco Co. (C. C.) 146 Fed. 557, that under the decision in Hale v. Henkel there is a distinction between an individual and a corporation, and that the latter cannot avail of the provisions of the fifth amendment to the Constitution, which declares that no person "shall be compelled in any criminal case to be a witness against himself,"—when properly called upon to produce its books for examination in court.

This subpœna is directed to the corporation itself, and not to some particular officer of the corporation. No doubt this is a wholly novel practice; but it seems to be a logical outcome of the distinction between corporation and individual pointed out in the opinion cited, and the alleged difficulties in such practice are theoretical rather than practical. The subpœna does not command any one to testify generally, as the usual form of subpœna does, but in many cases all that is sought to be elicited from a witness served with such subpœna is that he is the person named in the subpœna, and that A, B, and C are the books or papers asked for. There is nothing startling in dispensing with such perfunctory testimony when the production of the book or papers by the party itself concedes their identity. I am not prepared to assent to the proposition that the individual officer who produces books and papers under an ordinary subpœna duces tecum is entitled to insist that he shall be sworn generally and shall be allowed, unasked, to volunteer explanations to the grand jury as to what the documents contain. Nor does there seem to be any difficulty in the fact that the "corporation" cannot physically produce the books, but must avail of some human means to transmit them to the grand jury room; it does not necessarily follow that the individual thus selected should be one who might be criminated by the documentary evidence he carries with him; the corporation when the subpœna is directed solely to it may select its own messenger to transport the documents. It is not understood that the district attorney claims that such a subpœna as this can be used to get possession of the books for purposes of investigation and examination by clerks, experts, and irresponsible parties outside of the immediate presence of the grand jury. Obedience to the subpœna will be complete when the books called for are presented to the grand jury in an actual session, and are taken away again by the messenger of the corporation as soon as the particular session adjourns; while the session lasts they must remain with the grand jury. Under these circumstances, the suggestion of risk of alteration, spoliation; etc., would seem to be fanciful.

The motion is denied.

Note.—The American Sugar Refining Company, refusing to obey the subpœna, was fined $500, and appealed.