### In re NATIONAL WINDOW GLASS WORKERS et al.

(District Court, N. D. Ohio, E. D.   November 9, 1922.)

No. 817.

1. **Grand jury ⬦⟹36—Subpœnas to testify on behalf of United States need not designate charge being investigated by grand jury.**

   Under Rev. St. § 877 (Comp. St. § 1488), providing that witnesses who are required to attend any term of the District Court on the part of the United States shall be subpœnaed to attend and testify generally on their behalf, and under such process shall appear before the grand or petit jury, or both, as they may be required by the court or district attorney, it is not necessary that subpœnas on behalf of the United States for witnesses to appear and produce documents before the grand jury shall designate the charge being investigated by the grand jury.

2. **Witnesses ⬦⟹304(1)—Cannot refuse to testiy on ground of incrimination under Anti-Trust Act of witness or corporation of which he is an officer.**

   A witness to whom immunity is extended in the case of violations of the Sherman Anti-Trust Law (Comp. St. §§ 8820–8823, 8827–8830) will not be excused from testifying because his evidence may incriminate him, and no such privilege or immunity exists in favor of a corporation of which he is an officer or employee.

3. **Grand jury ⬦⟹26, 41—Have power to investigate without previous charge, and proceedings are secret.**

   A grand jury has the right to inquire, without the necessity for a previout charge against any one, and its investigations and proceedings are and should be kept secret, except when the interests of justice require that a disclosure be made.

4. **Grand jury ⬦⟹41—Have inherent power to prevent abuse of their process.**

   Courts of law have inherent power over their own process, to prevent abuse of discretion and injustice, and in the exercise of that power may disregard the secrecy of grand jury proceedings whenever the ends of justice require it.

5. **Grand jury ⬦⟹1—Not an independent body and is subject to control of court.**

   A grand jury has no existence aside from the court which calls it into existence and on which it is attending, and does not, after it is summoned, become an entirely independent body, in view of Judicial Code, §§ 284, 285 (Comp. St. §§ 1261, 1262), giving the court discretion to summon and discharge a grand jury, so that it cannot function at its uncontrolled will or the will of the district attorney or special assistant.

---

⬦⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. **Grand jury ⬤➔36—Process to compel attendance of witnesses is that of the court.**

The process by which witnesses are compelled to attend a grand jury investigation is the process of the court, and not of the grand jury or of the district attorney, and the court has a supervisory duty of seeing that its grand jury and its process are not abused or used for purposes of oppression and injustice.

7. **Grand jury ⬤➔36—Subpœnaing witness to procure testimony for use in another district held abuse of process.**

Where an indictment was already pending in another district, subpœnas for witnesses to attend and produce documents at a grand jury investigation of the same charge, which was mainly for the purpose of enabling the government to procure testimony to be used in the trial of the other indictment, though it intended to ask for an indictment by that grand jury, on which, however, defendants would be tried only in the event the other indictment was dismissed for want of prosecution, was an abuse of process, so that such subpœnas will be vacated and set aside and the grand jury investigation restrained, until the government either has tried the defendants in the other district or stipulates for trial first on any indictment obtained from this grand jury.

8. **Criminal law ⬤➔113—Conspiracy to violate Anti-Trust Act may be prosecuted wherever overt act is committed.**

Though indictments for conspiracies in violation of the Sherman Anti-Trust Law (Comp. St. §§ 8820–8823, 8827–8830) need not aver an overt act to complete the offense, prosecutions for such conspiracies may be maintained in any jurisdiction where an overt act has been committed, the same as in cases of other conspiracies.

9. **Criminal law ⬤➔200(6)—Former prosecution for same conspiracy bars subsequent prosecution on overt act thereafter.**

A conviction or an acquittal on an indictment for continuing conspiracy bars another prosecution based on the same conspiracy, but different overt acts, during the period subsequent to the return of the indictment on which the conviction or acquittal was had.

Summary application by the National Window Glass Workers and others to quash and vacate certain subpœnas and subpœnas duces tecum requiring applicants to appear and give testimony and to produce documents in a grand jury investigation. Application granted.

Calfee, Fogg & White, of Cleveland, Ohio, for National Window Glass Workers.

Squire, Sanders & Dempsey, of Cleveland, Ohio, for National Association of Window Glass Mfrs.

WESTENHAVER, District Judge. The parties named in the caption hereof filed in this court October 9, 1922, an application to quash, vacate, and set aside certain subpœnas and subpœnas duces tecum duly served, requiring them to appear and give testimony and also produce documents in a grand jury investigation about to be undertaken by a grand jury attending upon this court. Similar applications were filed herein October 9, 1922, by John R. Johnston, Jr., vice president of the Johnston Brokerage Company, and October 12, by American Window Glass Company, William L. Monro, R. M. Speer, Thomas Moore, and George H. Mayer, and October 12, by J. W. Rutter, W. C. Hoffman, Harry G. Tussey, Frank Mason, and E. R. Pierson, and October 13, by Andrew R. Dole. All these applications are supported by affidavits

⬤➔For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and seek relief on the same ground. No opposing affidavits have been filed.

The grounds upon which relief is sought are the following: (1) That the grand jury investigation in which these several witnesses are to testify, and with respect to which the documents are to be produced, is being carried on as to a supposed offense already investigated by a grand jury in the United States District Court for the Southern District of New York, and as to which an indictment against the American Window Glass Company and some 90 other defendants has already been presented and is now pending and awaiting trial, and that the present investigation, being directed to the same alleged offense, is an abuse of the process of this court, in that the dominating, if not the only, object is to examine witnesses in advance of trial, and to procure evidence for use in the trial of defendants on said indictment now pending in the Southern district of New York. (2) That said subpœnas and subpœnas duces tecum are insufficient and invalid, in that they do not correctly and sufficiently described the cause or nature of the proceedings with respect to which said witnesses are required to appear and testify, and with respect to which said documents are required to be produced, nor the name or names of any persons against whom the present grand jury investigation is directed. Certain other grounds are urged in the moving papers of some of the applicants directed to the form and sufficiency of the subpœnas duces tecum, but upon hearing before me the above grounds were the only ones urged and relied on; hence in this memorandum all other objections will be ignored.

[1] The second ground of relief will be first disposed of. Neither the subpœnas nor the subpœnas duces tecum give any information as to the matter or proceeding, nor the names of persons supposed to have committed offenses, as to which the present investigation is about to be instituted. These subpœnas merely require the witnesses to appear and testify on behalf of the United States. Some of them describe the matter as to which witnesses are to testify, or with respect to which documents are to be produced, as being on behalf of the plaintiff in the case of United States v. Grand Jury. Section 877, R. S. (section 1488, U. S. Comp. St. 1916), provides that witnesses who are required to attend any term of a District Court on the part of the United States "shall be subpœnaed to attend to testify generally on their behalf, and not to depart the court without leave thereof, or of the district attorney; and under such process they shall appear before the grand or petit jury, or both, as they may be required by the court or district attorney." Judged by this language, the subpœnas would appear to be sufficient in form. Apparently a witness subpœnaed in a criminal case to testify on behalf of the United States, either before a grand or petit jury, need only be summoned to testify generally on behalf of the United States. After he appears, he may be required to appear and give testimony before either jury. Such, also, seems to be the uniform trend of decision. It has been repeatedly held that no specific charge against any person, nor any description of any alleged offense, is necessary in compelling a witness to testify before a grand

jury, and that a witness may not refuse so to testify without such charge or statement having first been presented to the grand jury or communicated to him. See Hale v. Henkel, 201 U. S. 43, 26 Sup. Ct. 370, 50 L. Ed. 652; Wilson v. U. S., 221 U. S. 361, 375, 31 Sup. Ct. 538, 55 L. Ed. 771, Ann. Cas. 1912D, 558; Hendricks v. U. S., 223 U. S. 178, 184, 32 Sup. Ct. 313, 56 L. Ed. 394; Blair v. U. S., 250 U. S. 273, 39 Sup. Ct. 468, 63 L. Ed. 979.

[2] These cases are authority also for the proposition that a witness to whom immunity is extended, as in violations of the Sherman Anti-Trust Law, will not be excused from testifying because his evidence may incriminate him, and that no such privilege of immunity exists in favor of a corporation of which he is an officer or an employee. This ground of relief, therefore, is, in my opinion, not well taken.

The first ground, however, is the one mainly urged and relied on. A brief statement of facts is necessary to an understanding of the questions arising thereon. On March 17, 1922, a grand jury attending on the United States District Court for the Southern District of New York returned an indictment charging some 90 defendants, including American Window Glass Company, National Window Glass Workers, Window Glass Cutters' and Flatteners' Association of America, and others, with a conspiracy to fix prices and curtail production as to certain glass products in violation of the Sherman Anti-Trust Act. This conspiracy, while alleged to have originated more than three years prior to the return of this indictment, is alleged to be a continuing conspiracy and still in existence. A demurrer to this indictment was, some time in June, overruled. The defendants thereupon immediately moved for a bill of particulars, and on August 1 this motion was granted, requiring the bill of particulars to be served on August 20.

This bill, owing to an extension of time being granted, was not served until September 16, and, when filed, the defendants objected thereto as insufficient and not in compliance with the order of the court, and moved for a supplemental bill. In the meantime the government had evidenced its intention to proceed promptly to place defendants on trial under this indictment, and the case was put on the calendar September 11, 1922, to fix a date for trial; but, because the bill of particulars had not been served, the government's motion to fix the time went over until October 9, and again at the government's request until October 16, and again on account of illness or other engagements of government's counsel until October 23. Whether or not a date for trial has since been fixed, or a sufficient bill of particulars has been served, is not disclosed by the papers submitted to me. On this hearing it is represented that some two to three months' time will be consumed in the trial. Obviously, in this situation, counsel both for the government and for the defendants either were or ought to have been industriously engaged in preparation for trial.

In July, after defendants' demurrer was overruled and their motion for a bill of particulars was filed, the government began another investigation before a grand jury attending on the United States District

Court for the Southern District of New York. Subpœnas were issued requiring the attendance of substantially the same witnesses, and subpœnas duces tecum requiring the production of substantially the same documents, as are involved in the present hearing. Defendants moved to quash the same, on the ground that the government was not instituting this grand jury investigation in good faith, but merely for the purpose of examining witnesses in advance of and in preparation for trial, and to obtain evidence to be used on the trial, and in complying with the order for a bill of particulars. Government counsel promptly admitted this to be true, and thereupon an order was made granting the motion and vacating and setting aside the subpœnas.

The first subpœnas issued out of this court are dated September 22, 1922, and require the witnesses to attend October 9, 1922. Other subpœnas were later issued, requiring other witnesses to appear and to produce documents at later dates. The present motions were all filed promptly after said subpœnas were served. It is not disputed that the subject-matter respecting which said witnesses will be required to testify and such documents will be used is the same conspiracy as that described in the pending New York indictment, nor that these witnesses and documents are substantially the same as were involved in the July grand jury investigation. No disclaimer is made that evidence elicited by the present investigation is not desired for use and will not be used in aiding in the prosecution of the New York indictment. The same special assistant who had charge of the New York investigation, resulting in the presentation of that indictment, and of the July grand jury investigation, appears here and is in charge of the present investigation. The only new feature distinguishing the present situation from that before the court when the subpœnas were vacated and set aside in New York is that government counsel say it is now their purpose to ask the grand jury to return a new indictment in this district. The purpose is still announced to proceed promptly to try the defendants first on the New York indictment, and to try defendants on any new indictment obtained in this court only in the event the New York prosecution shall fail for want of jurisdiction. It seems that the jurisdiction of the New York court is invoked, because overt acts in furtherance of the conspiracy are alleged to have taken place in that district, but not that the conspiracy was entered into therein.

This court accepts in good faith the assertion of government counsel that it is their purpose to ask an indictment as a result of this grand jury investigation. It finds, however, upon all the facts, that it is the dominating purpose of this investigation to examine witnesses in advance of trial and to obtain documents and evidence for use in the trial of the New York indictment. The correctness of this finding is supported by the asserted reason for seeking a new indictment, the absence of any disclaimer of the other objects and purposes attributed to the government, the repeatedly expressed purpose of the government to try defendants first on the New York indictment, the fact that both parties are and have been diligently preparing for that trial, that many of the documents brought here by government counsel for use in this investigation are in the custody of the New York court, and the

declared purpose not to try anybody on a new indictment, except in a remote future contingency.

Upon the law, government counsel contend that this court is without power to inquire into the purposes or to control the course of a grand jury investigation; that a grand jury is an independent body; that the assertion of any power to inquire as to the object of a grand jury investigation, or to restrain or direct it, is inconsistent with that independence and with the secrecy of its proceedings; that a grand jury may, of its own motion, without leave or consent of the court, begin an investigation; and that the power of the district attorney or a special assistant appointed pursuant to Act June 30, 1906 (34 Stat. 816 [Comp. St. § 534]), to suggest matters to a grand jury for investigation is coterminous with the power and independence of the grand jury itself, and is equally exempt from supervision by the court. In support of this contention are cited Hale v. Henkel, 201 U. S. 43, 26 Sup. Ct. 370, 50 L. Ed. 652; In re Kittle (C. C.) 180 Fed. 946; In re Bornn Hat Co. (C. C.) 184 Fed. 506, affirmed Bornn Hat Co. v. U. S., 223 U. S. 713, 32 Sup. Ct. 521, 56 L. Ed. 626; Wilson v. U. S., 221 U. S. 361, 31 Sup. Ct. 538, 55 L. Ed. 771, Ann. Cas. 1912D, 558; Blair v. U. S., 250 U. S. 273, 39 Sup. Ct. 468, 63 L. Ed. 979; U. S. v. Thompson, 251 U. S. 407, 40 Sup. Ct. 289, 64 L. Ed. 333.

[3] All of these authorities and many others have been carefully studied. Undoubtedly they hold that a grand jury is an independent body, and that it has the right to inquire without the necessity for a previous charge against any one; that its investigations and proceedings are and should be kept secret, except when the interests of justice require that disclosure shall be made. Undoubtedly they also hold that the right and power of a district attorney or of a special assistant to suggest matters for consideration by a grand jury are coterminous with and stand upon the same independent footing as that of the grand jury itself; that the discharge upon hearing by a United States commissioner, or a refusal by one grand jury to indict, or the pendency of another indictment in the same or a different jurisdiction for the same offense, are not sufficient of themselves to warrant a court in interfering with a grand jury investigation. It may be and is conceded that, unless something more appears which discloses a plain abuse of the court's process, a court will not interfere. The question, however, is one of power in the court. In the cases cited, particularly the Kittle and Thompson Cases, expressions may be found which, if not read with discrimination, might mislead one into the view that the power of the court to prevent abuse of its process in connection with a grand jury investigation does not exist. This is not, however, my understanding of these cases nor of the law.

[4] In Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27, 28 L. Ed. 145, it was said that courts of law have inherent power over their own process to prevent abuse, oppression, and injustice. This is fundamental law. Authorities to that effect might be multiplied without limit. It is the basis of the holdings that the secrecy of grand jury proceedings may be disregarded whenever the ends of justice require it, and of the conceded, although carefully guarded and seldom exer-

cised, rule that an indictment will be quashed if returned by a grand jury upon evidence wholly incompetent. See McKinney v. U. S. (8 C. C. A.) 199 Fed. 25, 27, 28, 117 C. C. A. 403; Chadwick v. U. S. (6 C. C. A.) 141 Fed. 225, 235, 72 C. C. A. 343; U. S. v. Perlman (D. C.) 247 Fed. 158; U. S. v. Silverthorne (D. C.) 265 Fed. 853.

[5] The process of the court comprehends proceedings before grand juries and the means whereby witnesses may be required to attend and testify. A grand jury has no existence aside from the court which calls it into existence and upon which it is attending. A grand jury does not become, after it is summoned, impaneled, and sworn, an independent planet, as it were, in the judicial system, but still remains an appendage of the court on which it is attending. No grand jury shall be summoned to attend any District Court unless the judge thereof, in his own discretion or upon a notification by the district attorney that such jury will be needed, orders a venire to issue therefor. Judicial Code, § 284 (Comp. St. § 1261). The District Court may discharge a grand jury whenever in its judgment it deems a continuance of the sessions of such a jury unnecessary. Judicial Code, § 285 (Comp. St. § 1262). All indictments or presentments of a grand jury become effective only when presented in court and a record is made of such action. A grand jury is not, therefore, and cannot become, an independent, self-functioning, uncontrollable agency. It is and remains a grand jury attending on the court, and does not, after it is organized, become an independent body, functioning at its uncontrolled will, or the will of the district attorney, or special assistant.

[6] The process by which witnesses are compelled to attend a grand jury investigation is the court's process and not the process of the grand jury, nor of the district attorney. If a witness fails to attend, the power, as well as the duty, to compel his attendance, is vested in the court. If, after appearing, he refuses to testify, the power, as well as the duty, to compel him to give testimony is vested in the court, and not in the grand jury. It can therefore never become an immaterial matter to the court what may be done with its process or with its grand jury. A court would not be justified, even if it were so inclined, to create or call into existence a grand jury, and then go off and leave it. A supervisory duty, not only exists, but is imposed upon the court, to see that its grand jury and its process are not abused, or used for purposes of oppression and injustice.

The government's contention to the contrary is most strongly supported by certain expressions found in Hale v. Henkel, supra, and United States v. Thompson, supra. In Hale v. Henkel, however, Mr. Justice Brown, 201 U. S. at page 65, 26 Sup. Ct. 370, 50 L. Ed. 652, after stating in the broadest language the independence and inquisitorial power of a grand jury, its right to investigate and inquire of its own motion, or at the instance of a proper official, with or without a charge previously lodged with it against any person or any subject-matter, further says:

"Doubtless abuses of this power may be imagined, as if the object of the inquiry were merely to pry into the details of domestic or business life. But

were such abuses called to the attention of the court, it would doubtless be alert to repress them."

The Thompson Case was the simple one of a second investigation resulting in an indictment of an alleged offense which had been previously presented to and rejected by a former grand jury. The District Judge quashed the indictment because this second investigation had been made and the indictment presented without first obtaining consent of the court to present the matter anew to the second grand jury. Obviously, the District Court has no such power. And it was in combating a claim of such power that Mr. Chief Justice White used the language relied on. The broad scope of the two general propositions formulated by him in his opinion is, however, carefully limited by the last paragraph but one of the opinion. In substance that paragraph says that a judge may not call into existence a discretion to prohibit the performance by a grand jury or a district attorney of duties authorized by law, lest, if their performance be permitted, there may be abuse. This is not the same thing as holding that an abuse in the performance of those duties is beyond the control of the court. On the contrary, this paragraph recognizes the existence in the District Court of a sound discretion to be used for the purpose of regulating reasonably the performance by the grand jury and the district attorney of the duties conferred on them by law.

As I understand the reasoning, this is merely another way of saying that a District Court has inherent power to prevent abuse of its process. If this be true, then this power extends to the misuse of subpoenas for the purpose of requiring witnesses to appear and testify before grand juries and to the proceedings of the grand jury itself, as well as to the abuse of process in other spheres of the court's jurisdiction. If I am right, as I believe I am, in my view of the court's power, the question here in its last analysis comes down to what is an abuse of process, and whether, upon the facts as found herein, is the process of this court abused? Or, to put it another way, is such a case made as requires this court to exercise its inherent power to prevent the use of its process for purposes of oppression and injustice?

[7] The subject-matter of the present grand jury investigation has been made the subject of a grand jury investigation in the Southern district of New York. An indictment has been returned therein charging certain persons with having conspired in restraint of trade. The government has announced its purpose and intention to try the indicted persons as expeditiously as is reasonably practicable. Both parties have been, and are now, or ought to be, engaged in preparing for that trial. At a date coincident with the time fixed for counsel and parties to appear in New York to fix a time of trial, the present grand jury investigation is started. This investigation requires the presence here of the same counsel who are or should be engaged in preparing that case for trial. This investigation also requires the presence here of witnesses and documents required by both parties elsewhere in that preparation. . The only claimed justification for the present investigation is to get a new indictment, not for the purpose of immediate trial, but only for use in the event the New York prosecution should

fail for want of jurisdiction. This claim seems to me to be without much substance. See In re Palliser, 136 U. S. 257, 10 Sup. Ct. 1034, 34 L. Ed. 514; Benson v. Henkel, 198 U. S. 1, 15, 25 Sup. Ct. 569, 49 L. Ed. 919.

[8, 9] In ordinary cases of criminal conspiracy it is settled law that the conspirators may be prosecuted in any jurisdiction where an overt act has been committed, and that the statute of limitations begins to run only from the date of the commission of the last overt act. See Hyde v. U. S., 225 U. S. 347, 32 Sup. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614; Brown v. Elliott, 225 U. S. 392, 32 Sup. Ct. 812, 56 L. Ed. 1136. It is true that indictments for conspiracies in violation of the Sherman Anti-Trust Law (Comp. St. §§ 8820–8823, 8827–8830) do not require the averment of an overt act to complete the offense, but no good reason is perceived why the test of jurisdiction should be different. See Nash v. United States, 229 U. S. 373, 33 Sup. Ct. 780, 57 L. Ed. 1232; Armour Packing Co. v. United States, 209 U. S. 56, 28 Sup. Ct. 428, 52 L. Ed. 681. And it is undoubtedly true that a conviction or an acquittal on an indictment for a continuing conspiracy would bar another prosecution based on the same alleged conspiracy during a period subsequent to the return of the indictment on which the conviction or acquittal was had. See United States v. Kissel, 218 U. S. 601, 31 Sup. Ct. 124, 54 L. Ed. 1168.

The situation, briefly summed up, is this: May the government proceed from district to district in which overt acts have been committed in the furtherance of a continuing criminal conspiracy, and continuously and successively investigate the same transactions, and indict the same persons? May counsel, parties, and witnesses be called from their duty and obligation to prepare for trial on an indictment already returned, at the will or discretion of government counsel? Is there any power or discretion in a District Court to prevent or set a limit to the oppression or injustice which may thus be inflicted? If any necessity or substantial reason for a new investigation and a new indictment is shown, the court undoubtedly would decline to interfere with a new investigation and the return of a new indictment. Likewise the court will not interfere unless good and substantial reason therefor, in addition merely to the inconvenience to parties and counsel, is clearly shown. Every precaution which the courts have imposed to protect the secrecy, freedom, and independence of grand jury investigations should and ought to be preserved. But here no reason is suggested for the new investigation, except one of little substance.

In addition thereto, it is shown that the government intends to proceed as expeditiously as possible with the trial of an indictment already obtained, and that counsel, witnesses, and parties should be giving their attention to the work of preparing for that trial. It is also shown that the dominating, if not the only, object of the present investigation is to examine witnesses in advance of trial, find out what their testimony is to be, so as to use it in that trial, and to obtain the possession and production of documents for that purpose. This, it seems to me, presents a situation which calls for a limited interference on the part of this court. The present grand jury investigation should be re-

strained, and the outstanding subpœnas should be vacated and set aside, until the Government either has tried the defendants on the New York indictment, or has filed in this court a stipulation in satisfactory form evidencing an intention to try the defendants here first upon any new indictment that may be obtained.

Such will be the order of the court.