Application of TEXAS CO. et al.
Nos. 55D, 56D, 57D.

District Court, E. D. Illinois.
June 5, 1939.

Topliff & Horween, Samuel Topliff and Ralph Horween, all of Chicago, Ill., for applicants Globe Oil & Refining Co., I. A. O'Shaughnessy, and G. O. Woodruff.

John Henry Lewin, Grant W. Kelleher, Nelson A. Sharfman, and George W. Wise, Sp. Assts. to Atty. Gen., and Ray M. Foreman, Asst. U. S. Atty., of Danville, Ill., for respondents.

LINDLEY, District Judge.

The present applications seek to quash the grand jury subpoenas heretofore issued and to restrain the Government and its prosecuting officials from presenting certain witnesses and documents included in the subpoenas.

To appreciate fully the legal effect of the applications I think it well to revert briefly to some of the elementary principle's of our form of government.

■ There are three departments. Upon the Congress and upon it alone devolves the responsibility of determining the wisdom and policy of legislation. The Executive may recommend legislation, and so may other citizens; but eventually the Congress is wholly sufficient unto itself. It is the sole judge of the policy to be reflected in its enactments; and no other representative or department of the government may interfere, so long as it acts within the Constitution. It is intrusted with general authority to enact legislation at its discretion, subject only to the limitations prescribed by the sovereign people in the Constitution. In pursuance of this responsibility Congress long ago enacted laws having to do with anti-trust subject matter. The Sherman Act has been on the books for many years. The Clayton Act is of shorter life, but it has been a statute for more than twenty years. The two statesmen for whom those pieces of legislation were named have long since passed to their fore-fathers; but the statutes persist and express a settled policy in our legislative enactments.

Harry T. Klein and George W. Ray, Jr., both of New York City, M. A. Jacobson, of Waukesha, Wis., and S. A. L. Morgan, of Houston, Tex., for applicants The Texas Co., W. S. S. Rodgers, H. W. Dodge, S. B. Wright, Walter Hochuli, and W. F. Murdy.

Webster & Garside and Bethuel M. Webster, all of New York City, for applicants Tide Water Associated Oil Co., Edward L. Shea, Noel Robinson, John W. Warner, John D. Collins, and Harold F. Parsons.

■ The Executive Department, with all its branches, is charged with the true and faithful administration of the acts of Congress. Among its manifold duties in this respect, it is bound to prosecute those whom it reasonably believes should be prosecuted as violators of the law. It is its duty to administer all laws honestly and efficiently; and for its failure to do so penalties and remedies are provided. The

Executive Department carries the acts of the Congress into effect, administers them, secures their due performance and enforces them. Only when it seeks judicial aid in the effectuation of its legitimate functions, has the judiciary anything to say as to the propriety of its actions. In the latter instance, the judiciary may interfere or restrain only when the act of the administrative department results in violation of the legal or constitutional rights of another. The executive official, in the proper discharge of his duties under the constitution, is as independent of the courts as he is of the legislature.

The judiciary is in no wise concerned with the proper execution of the law; it has nothing to do with the motives or policy of legislation. Rather it is the department charged with the interpretation of the laws and their enforcement at the behest of private parties or the government. But courts have no power other than judicial, and their orders must accord with the Constitution and the laws enacted by the Congress. With the motives of the legislators the courts do not concern themselves. The judiciary can only inquire whether the means utilized in the execution of a power granted are forbidden by the Constitution. It cannot go beyond that inquiry without intrenching upon the domain of another department of government. This it may not do with safety to our institutions. Interstate Commerce Commission v. Brimson, 154 U.S. 447, 14 S.Ct. 1125, 38 L.Ed. 1047. Nor does it fall within the judicial function to control the exercise of the discretionary powers which, by the Constitution or statutes, are vested in public administrative officials. If that discretion is exercised in such an arbitrary or unjust and discriminating manner as clearly to deny to individuals their right to the equal protection of the laws, or to due process of law, or any other constitutional right, the courts may intervene, and they may hold unconstitutional any attempt upon the part of the legislature to vest in administrative officials a discretion that is essentially arbitrary in character.

The grand jury originated long ago in England. From its beginning it had inquisitorial power and at one time, probably, even some trial power. At times it was a protection of the people against the sovereign. Fortunately, under our system of government, we have had little occasion for such protection. But we have retained the grand jury, believing it to be a wise, efficient and beneficent element of our official machinery of justice. One truism persuading us to perpetuate the institution is that unfortunately at times a prosecutor may be of such character that if the right to determine whether there shall be prosecution or non-prosecution of an offender is lodged in him, miscarriage of justice results. This, perhaps, savors of the old idea of protection against the sovereign. So, wisely, I believe, we have retained this age old institution in our constitution and laws.

A grand jury is a part of the court machinery, an all-important element in the agency of the government endowed with judicial power, for one accused of felony may not be prosecuted except upon a true bill returned by a grand jury. It is under control by the court to the extent that it is organized and the legality of its proceedings determined by the court in accord with the statutes. Its members are subject to the court's supervision and control for any violation of their duties. Beyond this supervisory power over them, however, the court cannot limit them in their legitimate investigation of alleged violations of the law. They have a right to bring to the attention of their fellow members any crimes known to any one of them, even though no complaint is presented by any prosecuting officer. They have the right to subpoena and to have called before them persons and documents, for the purpose of determining whether there has been violation of the law. In short, they have inquisitorial powers, the full extent of which and the full limitations upon which have never been completely settled by any one precedent or any number of precedents.

The uncertainty as to the grand jury's powers results from the fact that the institution has grown from the common law of England; that courts, investigating its historical growth, have differed as to its powers; and that our legislation regarding it is extremely meagre. I find no definition of a grand jury's powers in the federal statutes. I find rather a statute which authorizes me to call such a body, provides the manner in which I shall make the call, fixes certain limitations, defines a quorum, and gives the court the right to excuse or discharge. But, beyond the briefest implications contained in the statutes, the Congress has not seen fit to define the jury's

power, or to designate the exact limitations upon it. It has remained for the courts, tracing the history of the grand jury from the time of early England, to determine for themselves when, upon a particular set of facts and circumstances, a question is·presented, just how far a grand jury may properly go or should be allowed to go.

Undoubtedly the court has some discretion, but here I am asked as a member of the judiciary to say that the Government, the Executive Department, charged with the execution and administration of the laws, may not present to a grand jury matters which counsel for the Government assure me are essential, according to their conception of their duties, to a complete investigation and prosecution of what is thought to be a violation of the law. They assure me that complaints have been made that practices, which they deem, from their viewpoint, violations of the Anti-Trust Law, have continued since the return of the indictments in Madison and that if in this investigation facts should be developed justifying further indictments, they intend to ask for true bills.

■ Should I, who have nothing to do with the policy of legislation or with the execution of the law, assume the authority to say: "No, the Executive Department may not present to a grand jury of this community the facts which it assures me it believes constitute a violation of the national law?" It seems to me that the question answers itself.

Irrespective of what other courts may have said, such action seems to me an assumption, an usurpation of power by the court over the acts of a coordinate branch of the Government which I have no right to assert. Such action on my part is beyond my conception of my proper obligations and my proper duty under my oath of office; it is an undue interference with the executive branch.

■ To my mind, it is of no importance whether there are other indictments against these petitioners, or any of them, in other districts. To my mind, it matters not whether any of them have been acquitted before, in any other prosecution. To me, it is wholly a matter of indifference whether difficulties have been encountered elsewhere in securing evidence in other cases. To my mind, it is my duty, as a member of the judiciary, enforcing the laws of this nation, to afford to the Executive Department in discharging its duty of execution of the laws, full and complete opportunity to present to the grand jury any alleged violation of those laws, at any time when I have a grand jury in session.

■ There is no question of previous conviction, previous acquittal,·or res adjudicata; a grand jury investigation is an ex parte proceeding. In the end the jury has only one function to perform, to report to the court that it has reasonable cause to believe that probable grounds exist or do not exist for the prosecution of some one or more parties for violation of the law. The grand jury merely makes an accusation.

■ The right to interpose pleas of former conviction, of former acquittal or of immunity, is in no wise involved. This is not a trial; it is not a determination of guilt or innocence. If this grand jury should return an indictment, it would be my duty to charge the petit jury sitting at a trial thereof that the indictment carries no evidence, no presumption of guilt; that the defendants are presumed to be innocent, and that that presumption will control until and unless it shall be overcome by proof of guilt beyond all reasonable doubt.

■ And, further, to me it seems that the fact that other indictments are pending is, under the assurances made by the Government in open court, of little importance. I have no way of knowing whether the facts developed in this matter may help the Government in its prosecution of other indictments. But even if they should be an aid in ascertaining where lies the truth, the goal of all judicial investigations, whatever the result of that truth may be, it is my duty as a court to allow it to be produced, if it is brought to light in a legitimate investigation, as I am assured this is.

So it seems to me, for the reasons I have stated, under my understanding of the grand jury's duty and our theory of constitutional government, that to allow these applications would amount to an assumption of executive power by a member of the judiciary, for by so doing I would be refusing to permit the Government to present matters it assures me are pertinent to investigation of what is complained of by citizens as violations of the national laws. This I shall not do. The applications must be denied. Such will be the order of the court.