**In the Matter of the GRAND JURY INVESTIGATION (GENERAL MOTORS CORPORATION).**

United States District Court
S. D. New York.
Feb. 27, 1963.

See also 210 F.Supp. 904.

Paul A. Owens, Antitrust Div. Dept. Justice, New York City, for the United States.

Cravath, Swaine & Moore, New York City, Bruce Bromley, New York City, of counsel, for General Motors Corp.

EDELSTEIN, District Judge.

The General Motors Corporation has moved for an order protecting it from the alleged abuse of the process of a grand jury investigation of perjury about to be conducted in the Southern District of New York. In order to prevent the accomplishment of what it characterizes as "an abuse of process" and a "circumvention of the discovery provisions of the Federal Rules of Criminal Procedure [rule 16]". General Motors urges *inter alia,* the court to promulgate a protective order prohibiting certain Department of Justice attorneys from participating in the investigation, and, restricting the use of any testimony which may be adduced in the grand jury investigation.

In April 1961, a grand jury which had been empanelled on November 17, 1959, returned an indictment charging the General Motors Corporation with monopolizing the manufacture and sale of railroad locomotives. See 15 U.S.C. § 1 (1958).[1] During the investigation the grand jury heard testimony from many witnesses, twelve of whom were present or former employees of General Motors Electro-Motive Division, the locomotive manufacturing division. Subsequently this indictment was transferred to the Northern District of Illinois where it is pending for trial. United States v. General Motors Corporation. (No. 61 Cr. 340, N.D.Ill.).

Thereafter, on or about September 21, 1962, another grand jury sitting in this district caused subpoenas ad testificandum to be issued to seven present or former General Motors employees. The subpoenas were issued at the instance

---

1. The indictment alleges that General Motors "has acquired a market share of approximately 84% of the railroad locomotives in the United States." (Par. 22 (a)). It also alleges that General Motors is the largest shipper of railroad freight in the United States. (Par. 8). The indictment is based in part upon the charge that General Motors used its freight traffic to reward or punish railroads that bought or refused to buy Diesel locomotives from them, thus acquiring a monopoly in their manufacture and sale. (Par. 21 a–c).

of the Antitrust Division of the Department of Justice for the purpose of eliciting testimony concerning alleged violations of the perjury statute, 18 U.S.C. § 1621, before the April 1961 grand jury by one or more of General Motors' officials, who had appeared therein.[2] General Motors alleges that the seven individuals so subpoenaed have been deliberately selected for interrogation because they have extensive knowledge of the facts that are in dispute in the Chicago criminal case and that they are likely to be important witnesses for the defense in that case.[3] General Motors also points out that none of the seven individuals whose appearance is now sought testified before the April Grand Jury. Thus, General Motors urges that their examination before a new grand jury would amount to a pre-trial deposition of defense witnesses. Although General Motors does not dispute the right of the Justice Department to investigate perjury, it does, however, vigorously dispute the propriety of the antitrust division's investigation of alleged perjury in the indicated circumstances.

General Motors contends that to permit the Antitrust Division to conduct the proposed grand jury investigation of perjury would be tantamount to permitting pre-trial discovery in the criminal antitrust action in Chicago, since the testimony sought in the perjury investigation will necessarily relate to matters testified to before the locomotive grand jury. General Motors argues that the use of the perjury grand jury is merely a procedural device to procure evidence to support an indictment previously returned in this district and now pending for trial in Chicago and is, therefore, an abuse of grand jury process. But see Fed.R.Crim.P. 16, 17. To prevent the Government from proceeding with what General Motors considers to be an unconscionable ruse, General Motors has proposed a broad protective order which, if granted, would impose limitations upon the Department of Justice's criminal investigative function and achieve a reallocation of responsibilities within the Department. The proposed order would (1) direct "that grand jury investigation of alleged perjury before the locomotive grand jury be conducted by persons, designated from time to time by the Attorney General, who are not members of, employed by, or attached to the Antitrust Division; (2) that the names of persons so designated shall be submitted to this Court in writing; (3) that the transcript of proceedings of any such grand jury investigation of alleged perjury, any document obtained in connection therewith and any information contained in said transcript or in any such document shall not be disclosed to any person other than the persons so designated; (4) that no person so designated, or otherwise having knowledge of the contents of said transcript or in any such documents shall thereafter partic-

2. 18 U.S.C. § 1621.

"Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury, and shall, except as otherwise expressly provided by law, be fined not more than $2,000 or imprisoned not more than five years, or both."

3. Of the seven individuals subpoenaed, one was in charge of the Electro-Motive Division from 1943 to 1962, first as General Manager and then as Vice-President and Group Executive. Another of the group was Director of Sales for Electro-Motive since 1945 and served as General Manager from 1952 to 1959. Two of the others subpoenaed have been locomotive salesmen for many years. One has been in the sales department of Electro-Motive since 1948 and another has been Director of Production Control and Purchasing for Electro-Motive from 1946–56. (See affidavit of Bruce Bromley, pp. 3–4).

ipate in any way in the preparation for or conduct of the trial of United States v. General Motors Corporation, (No. 61 Cr. 340), now pending in the United States District Court for the Northern District of Illinois; and (5) that said grand jury subpoenas *ad testificandum* issued at the instance of the Antitrust Division be quashed."

The Government submits that the perjury investigation has been instituted in good faith and it, therefore, contends that the evidence to be received in a properly instituted grand jury investigation will not be, in any way, unfairly or illegally obtained. To counteract the claim of abuse of process, the Department of Justice has submitted the affidavit of Morton M. Maneker, a Justice Department attorney, sworn to on November 5, 1962. The affidavit, according to the Government memorandum, sets forth the names of persons suspected of committing perjury before the grand jury, the grand jury testimony believed to be false, and the evidentiary basis for the investigation, including certain grand jury testimony. In addition, the affidavit enumerates the basis for calling particular witnesses before the perjury grand jury, and it further describes the deliberations within the Department concerning the institution and conduct of the present investigation.

The object of the affidavit, the Government contends, is to enable the court to exercise its responsibility to supervise the conduct of the perjury grand jury investigations in an effective manner. In order to determine whether the Government is proceeding in good faith in an investigation of suspected perjury, or, as General Motors contends, conducting improper pre-trial examinations in the locomotive case "under the guise of a grand jury investigation," the Court is urged to examine the affidavit as the basis for the Government's reasonable belief that perjury has been committed.

Immediately upon submission of the affidavit General Motors moved, pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure,[4] to obtain a copy of the affidavit, or, in the alternative, to expunge the affidavit from the record of these proceedings. Before considering the merits of the parties' contentions, concerning the proposed protective order, the court must deal with the threshold question of whether General Motors is to obtain a copy of the Maneker affidavit. General Motors contends that fundamental fairness requires that it be permitted to examine the Maneker affidavit so that it can effectively respond to the Government's claim that the perjury investigation is properly motivated.

█ It appears quite clear that all of the information set forth in the affidavit is secret and privileged. The affidavit sets forth the factual basis of the Government's suspicions and the scope and manner of the proposed investigation. Since the affidavit discloses internal communications of the Department of Justice with respect to its prosecuting functions, the information contained therein is, therefore, confidential and privileged.

4. Rule 6(e) provides:
"(e) Secrecy of Proceedings and Disclosure. Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties. Otherwise a juror, attorney, interpreter, or stenographer may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. No obligation of secrecy may be imposed upon any person except in accordance with this rule. The court may direct that an indictment shall be kept secret until the defendant is in custody or has given bail, and in that event the clerk shall seal the indictment and no person shall disclose the finding of the indictment except when necessary for the issuance and execution of a warrant or summons."

Appeal of S. E. C., 226 F.2d 501 (6th Cir., 1955); Zacher v. United States, 227 F.2d 219, 226 (8th Cir., 1955); Accord, Machin v. Zuckert, 6 Fed.Rules Serv. 2d 26b.43 Case 2 (D.C.Cir., 316 F.2d 336); Kaiser Aluminum and Chemical Corp. v. United States, 157 F.Supp. 939, 104 Ct. Cl. 38 (Ct.Cl.1958); Walling v. Richmond Screw Anchor Co. Inc., 4 F.R.D. 265 (E.D.N.Y.1941); see 8 Wigmore, Evidence, § 2378 (McNaughton Rev. 1961). And the material referred to in the affidavit constitutes the work product of the prosecuting attorneys and therefore is privileged under the rule of Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L. Ed. 451 (1947), subject to discovery only upon a showing of "good cause." See Developments in the Law—Discovery, 74 Harv.L.Rev. 940, 1027 et seq. (1961).

■ And beyond this, the information set forth in the affidavit discloses matters "occurring before the grand jury" within the meaning of Rule 6(e), Fed.R.Crim. P.[5] and is thereby accorded the protective veil of grand jury secrecy. Rule 6 (e) expresses the attitude of the federal courts in providing the grand jury with the utmost freedom in its deliberations and investigations pursuant to " 'a long-established policy' of secrecy * * older than our Nation itself. * * * To make public any part of its proceedings would inevitably detract from its efficacy. Grand jurors would not act with that independence required of an accusatory and inquisitorial body. Moreover, not only would the participation of the jurors be curtailed, but testimony would be parsimonious if each witness knew that his testimony would soon be in the hands of the accused. Especially is this true in antitrust proceedings where fear of business reprisal might haunt both the grand juror and the witness. And this 'go slow' sign would continue as realistically at the time of trial as theretofore." Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 399–400, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1958). See United States v. Proc-

ter & Gamble, 356 U.S. 677, 681, 78 S. Ct. 983, 2 L.Ed.2d 1077 (1957). Costello v. United States, 350 U.S. 359, 362, 76 S.Ct. 406, 100 L.Ed. 397 (1955); United States v. Johnson, 319 U.S. 503, 513, 63 S.Ct. 1233, 87 L.Ed. 1546 (1942). United States v. Rose, 215 F.2d 617, 628–629 (3rd Cir., 1954). Kaufman, The Grand Jury—Its Role and Its Powers, D.C., 17 F.R.D. 331, 333–336 (1955).

■ Under certain circumstances, however, the court may accommodate this policy of secrecy and require the production of the minutes of grand jury proceedings upon a showing that there is a "particularized need" or a "compelling necessity" for such disclosure. See United States v. Procter & Gamble, supra at 356 U.S. 682, 683, 78 S.Ct. at 986; Pittsburgh Plate Glass Co. v. United States, supra 360 U.S. at 399, 79 S.Ct. at 1240. The burden is on General Motors to show that the particularized need or compelling necessity exists for this affidavit in order that this court may be justified in lifting the veil of secrecy "discretely and limitedly." United States v. Procter & Gamble, supra 356 U.S. at 683, 78 S. Ct. at 986. General Motors has made no such showing here. General Motors has expressed concern over the possibility that an abuse of the grand jury's process may occur but it has offered nothing in the way of substantiating its concern. Such ephemeral apprehensions do not provide an adequate basis for a finding that there is a "compelling necessity" for the affidavit.

■ Furthermore, General Motors has no standing to request minutes of grand jury proceedings at this juncture since it does not suffer any injury as a result of a *prospective* grand jury investigation. See Application of Iaconi, 120 F.Supp. 589 (D.Mass.1954). The Iaconi case explicitly held that a person not named in a grand jury subpoena has no standing to complain concerning a proposed grand jury investigation. Although General

5. Ibid.

Motors may foresee some future harm ensuing from the grand jury testimony of the subpoenaed employees, it has no standing to complain at this point, the threshold of a grand jury investigation, that an investigation has been instituted.

■■■■ But General Motors' lack of *locus standi* does not foreclose further inquiry into the charge of grand jury abuse. The grand jury is subject to control and supervision of the court. General Motors' claim of abuse of process, even absent *locus standi,* is sufficient to invoke this court's inherent power to supervise the grand jury so as to prevent the perversion of its process. See In re National Window Glass Workers, 287 F. 219, 224 (E.D.Ohio 1922); Application of Iaconi, supra at 120 F.Supp. 590; Application of Texas Co., 27 F. Supp. 847 (E.D.Ill.1939). But the exercise of the court's inherent supervisory power does not mean that such supervision must be conducted in the presence of the public or that grand jury records are to be disclosed to unauthorized persons, such as General Motors. Even if General Motors had standing and were a party to this proceeding an *in camera* consideration of the Government's affidavit, rather than a public disclosure, would comport with the general policy of grand jury secrecy. General Motors' claims bring into sharp relief the conflict herein between two strongly countervailing considerations: the need for judicial supervision of the Government's conduct of grand jury proceedings to prevent their abuse, and the secret character of those proceedings. *In camera* inspection of secret or confidential information has been an approved procedural method to protect the rights of a party, through judicial control, while at the same time preserving the secret and confidential character of grand jury minutes and government investigative information. See United States v. Giampa, 290 F.2d 83 (2d Cir., 1961); United States v. Consolidated Laundries Corp., 291 F.2d 563, 574 (2d Cir., 1961). Ample precedent

for the *in camera* examination of the Government's affidavit is found in the procedure employed under the Jencks Act to permit, under appropriate circumstances, the examination of reports and statements of Government witnesses. See 18 U.S.C.A. § 3500. And such *in camera* determination of the defendant's right to examine the report or statement has been upheld as constitutional. See Scales v. United States, 367 U.S. 203, 258, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961).

■■■■ In pressing for disclosure of the Government's affidavit General Motors has relied on Morgan v. United States, 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129 (1937) and United States v. Cotter, 60 F.2d 689 (2d Cir., 1932) but reliance on these authorities is misplaced. In Morgan, an order of the Secretary of Agriculture fixing the maximum rates to be charged by stockyards commission men was held void for failure of the Secretary to hold a "full hearing" as required by the Packers and Stockyards Act. The court held that in administrative proceedings of a quasi-judicial character "the liberty and property of the citizen shall be protected by the rudimentary requirements of fair play. These demand 'a fair and open hearing' * * *." Morgan v. United States, supra 304 U.S. at 14–15, 58 S.Ct. at 774, 775. Although the Morgan case may be pertinent to administrative proceedings in which individual rights are adjudicated without affording that individual an opportunity to be heard, it loses its force as precedent in relation to a grand jury proceeding where no adjudication but merely an investigation will be effected. Absent evidence of the probability of abuse of grand jury process, there is no right to intrude into the secrecy of grand jury proceedings in order that one may be heard concerning the propriety of a proposed investigation.

■■■■ And United States v. Cotter, supra is equally inapposite since it involved the defendant's right to a general inspection of grand jury minutes after

the Government had used the defendant's grand jury testimony in impeaching him. General Motors' motion to obtain a copy of the Government's affidavit, or, in the alternative, to expunge it from the record is, therefore, denied.

The court passes now to the consideration of General Motors' contentions urging the adoption of the protective order. The court need not tarry long with General Motors' argument that the Federal Rules of Criminal Procedure prohibit pre-trial discovery by the Government since the Government does not take issue with that well-settled proposition. General Motors' contention merely begs the question for the problem herein is not whether pre-trial discovery is permitted by the Federal Rules of Criminal Procedure, but, rather, whether an improperly motivated grand jury investigation will, in effect, achieve impermissible criminal discovery.

■■■ The grand jury "is invested with broad investigatorial powers into what may be found to be offenses against federal criminal law. * * * A grand jury that begins the investigation of what may be found to be obstructions to justice * * * opens up all the ramifications of the particular field of inquiry. * * *" United States v. Johnson, supra 319 U.S. at 510, 63 S.Ct. at 1236. It is well settled that when a grand jury undertakes a *bona fide* investigation of suspected crime, facts incidentally brought to light by the grand jury are not tainted and that the Government's attorneys have the obligation to use such information for any purpose consistent with the public interest. In re Petroleum Industry Investigation, 152 F.Supp. 646 (E.D.Va.1957). This principle was recognized by the court in the Petroleum Industry case, supra at 647, in which the court stated:

" * * * [I]f books and papers coming to the knowledge of the Government's attorneys in a grand jury investigation develop a demand, and an adequacy of proof, for resort to civil litigation in the public interest, it is certainly proper, indeed incumbent upon them, to use for that purpose the information in their hands. This is nonetheless true though no process available in a civil action has the competency to discover this data beforehand."

The court in the Petroleum Industry case rejected an attempt to impose restrictions similar in their essential features to those now sought by General Motors. The court had entered an order permitting Government attorneys to remove documents subpoenaed by a grand jury in Alexandria, Virginia, to the offices of the Department of Justice in Washington, D. C. The Standard Oil Company of Texas, before complying with a subpoena *duces tecum*, moved the court for an order that "unless otherwise directed by the court the documents shall be used by Government counsel in this proceeding only" and further, that access to the documents be limited to those attorneys authorized by the Attorney General to appear before the grand jury. The court refused to impose the proposed limitations, holding that the public interest required the unrestricted use of the facts disclosed by the subpoenaed documents even though they might be used in different proceedings. Otherwise, the court reasoned, the Government attorneys would have to close their eyes to violations or renounce their obligation to enforce the law. In re Petroleum Industry Investigation, supra at 647.

In United States v. General Electric Co., 209 F.Supp. 197 (E.D.Pa.1962), the principle of the Petroleum Industry case was given further sanction. Therein, the court denied a motion by defendants to impound grand jury testimony and held that government attorneys could use evidence obtained in a grand jury investigation of antitrust violations to prepare civil damage actions on behalf of the United States. And see United States v. Procter & Gamble, supra 356 U.S. at 684, 78 S.Ct. at 987.

As for criminal proceedings, so long as the motivating purpose of the grand jury investigation is not the accumulation of evidence for a pending criminal case, the Government may use evidence incidentally acquired in the course of a legitimately instituted grand jury in the pending criminal case. Application of Texas Co., supra. In the Texas case, the Texas Company sought to restrain the Justice Department from presenting evidence concerning alleged antitrust violations to a Texas grand jury. The basis of the objection was the fact that there were indictments pending in another district in which the Texas Company and others were charged with antitrust violations involving the identical facts. In rejecting the proposed interference with the grand jury, the court stated:

"I have no way of knowing whether the facts developed in this matter may help the Government in its prosecution of other indictments. But even if they should be an aid in ascertaining where lies the truth, the goal of all judicial investigations, whatever the result of that truth may be, it is my duty as a court to allow it to be produced, if it is brought to light in a legitimate investigation, as I am assured this is."

Application of Texas Co., supra 27 F. Supp. at 851.

Furthermore, even where it is acknowledged that there are dual purposes for instituting the investigation the court may not interfere with the investigation if the grand jury seeks evidence of offenses other than those covered by pending indictments, even though the Government admits that one of the purposes of the investigation is to obtain evidence for use in the pending criminal trial. See United States v. Pack, 150 F. Supp. 262 (D.Del.1957); Application of Iaconi, supra.

General Motors relies primarily on In re National Window Glass Workers, 287 F. 219 (N.D.Ohio 1922) in support of its contention that the proposed protective order should be adopted. But the facts of the Window Glass case are readily distinguishable from the facts in the instant proceeding. In the Window Glass case, at a time when an indictment charging a violation of the antitrust laws was pending in the Southern District of New York, the Government issued subpoenas *ad testificandum* and *duces tecum* which the Government admitted were merely for the purpose of examining witnesses in advance of and in preparation for trial. The defendants succeeded in having these subpoenas vacated on the ground that the grand jury investigation was not instituted in good faith. Thereafter, the Government, undaunted by this adverse turn of events, issued additional subpoenas for the purpose of investigating the same conspiracy before a grand jury in the Northern District of Ohio. In light of these facts the court did not find it difficult to conclude that the "dominating, if not the only, object of the present investigation is to examine witnesses in advance of trial, find out what their testimony is to be, so as to use it in that trial, and to obtain the possession and production of documents for that purpose." In re National Window Glass Workers, supra at 227. When viewed correctly, the Window Glass case hardly saps the vitality of the well-reasoned precedents set forth supra.

Nor is In re April 1956 Term Grand Jury, 239 F.2d 263 (7th Cir., 1956) also relied on by General Motors, apposite here. In that case the court restrained treasury agents from using documents subpoenaed by a grand jury for the preparation of civil tax cases then pending. The Government had endeavored to obtain access to documents and records of certain taxpayers but after failing to secure compliance it abandoned use of civil process and resorted to grand jury subpoenas to bring the desired records before the grand jury. These records were promptly handed over to the Treasury agents for use in the pending civil

**184**

proceeding. The court held that an abuse of process was evidenced and it is clear that the court considered the dominant purpose for issuing the subpoenas to be the acquisition of evidence which had been otherwise unobtainable.

■ After considering the arguments of counsel, and upon an *in camera* examination of the Government's affidavit, the court is persuaded that the present investigation is a *bona fide* inquiry into the possible violation of the perjury statutes occurring before the locomotive grand jury. Unlike In re National Window Glass Workers, supra, and the 1956 Grand Jury case, the acquisition of evidence for use in a pending case is neither the sole nor the dominant purpose of the grand jury. Moreover, General Motors has failed to show that the perjury investigation has any other objective other than that prescribed by the Government. Accordingly, cases such as Application of Texas Co., In re Petroleum Industry Investigation and United States v. Pack, supra, clearly demonstrate that absent any evidence of improper objective there is no justification for restricting the use, by Government attorneys, of any testimony or documents obtained in the grand jury proceeding.

General Motors has sought to distinguish the Pack, Iaconi and Texas Co. cases by pointing out that its proposed protective order, if adopted, would not terminate the investigation, as would have been the case if the protective orders in Pack, Iaconi and Texas Co. had been adopted. General Motors contends that the entry of a protective order herein would merely "insulate the Antitrust Division from the proposed perjury investigation," and the investigation could proceed unabated, albeit with the appropriate safeguards proposed by General Motors. Although General Motors has taken pains to point up distinctions between the facts in the applicable precedents and the facts herein, the distinctions are ultra-fine and they amount to no more than distinctions without a difference. What General Motors seems to argue is that the "mild" limitation on the operation of the grand jury, which it proposes, is more justifiable than a total restriction of its powers. The short answer to this argument is that no restriction of any kind on grand jury process— mild or severe—will be imposed absent a showing of abuse of its process.

It is clear that the present investigation will necessarily relate to some aspects of the locomotive antitrust case since the perjury allegedly occurred during testimony before the antitrust grand jury. The investigation, however, is to be limited solely to perjury, an investigation not only proper but obligatory upon the Department of Justice. There has been no showing that the process of the grand jury is to be subverted, and the court will, therefore, not restrict the right of the Government attorneys to make free use of evidence incidentally acquired during the course of the grand jury investigation. Any interference with the Government attorney's right of untrammelled access to evidence so obtained, absent a showing of abuses, would violate the secrecy mandate of Rule 6(e) Fed.R.Crim.P. and would be contrary to the public interest.

General Motors contends that the regulations promulgated by the Attorney General document its claim that perjury investigations are assigned solely to the Criminal Division of the Department of Justice and that the assignment of perjury investigations to the Antitrust Division is an extraordinary procedure. See Order No. 271–62, 27 Fed.Reg. 5165.[6]

---

6. The several functions of the Antitrust Division, as enumerated in the bulletin include:

    (a) General enforcement, by criminal and civil proceedings, of the Federal Antitrust laws and other laws relating to the protection of competition.

    (b) Intervention or participation before administrative agencies.

    (c) Developing procedures to implement

The regulations prescribed by the Attorney General have assigned the enforcement of the Federal antitrust laws to the Antitrust Division without any reference having been made to the investigation of perjury collateral to an antitrust investigation. Moreover, recently promulgated regulations containing a detailed and exhaustive listing of the "Special Functions" of the Antitrust Division still do not mention perjury as one of its prescribed functions. Order No. 291–62, Fed.Reg. 12617 et seq.

General Motors does recognize, however, that the Attorney General or his deputy is specifically authorized by statute, 5 U.S.C. § 310 [7] to appoint attorneys to conduct any kind of legal proceeding that United States Attorneys are authorized to conduct. Acting pursuant to the statutory authority thus vested in him, the Deputy Attorney General has assigned attorneys engaged in the preparation of the pending criminal case to the grand jury investigation of perjury. This assignment was made, according to the Government, because those attorneys performed the preliminary investigation of perjury and forwarded a recommendation for further investigation to the Attorney General. Those attorneys were familiar with the complex facts relating to the suspected perjurious statements. Thereupon, formal letters of grand jury authority were issued to those attorneys and they were directed to conduct a grand jury investigation and present evidence of perjury to the grand jury.

The procedure followed by the Government is entirely proper and in accordance with the Attorney General's authority under 5 U.S.C. § 310. Since General Motors has failed to support its charge of grand jury abuse, any reallocation by this court of duties assigned to Department of Justice attorneys would be a completely unjustified and burdensome interference with a responsible administrative determination of the Attorney General. Such an unreasonable interference will not be sanctioned herein.

General Motors is not without remedies to protect itself in the event that the perjury investigation does not proceed in accordance with the Government's stated intentions. General Motors may petition the Chicago court for disclosure of the grand jury testimony pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure. If the grand jury has been subverted or abused General Motors can obtain disclosure of the relevant portions of the grand jury transcript. United States v. Procter & Gamble, supra. And General Motors can make application to the trial court in Chicago for the suppression of evidence should the Government attempt to use evidence improperly obtained in the perjury investigation. Its rights could then be protected and the issue of subversion could be determined by the court immediately concerned with the admission of evidence in the criminal case.

and receive information, maintain records and prepare reports by the Attorney General to the President, etc.

Special functions include institution of proceedings to impose penalties for antitrust violations of the Communications Act, Federal Trade Commission Act, and the representation of the various federal agencies when the administrative problem involves an application of the Antitrust laws.

No explicit mention of perjury is included among either the general or special functions.

7. 5 U.S.C. § 310. Conduct of legal proceedings.

"The Attorney General or any officer of the Department of Justice, or any attorney or counselor specially appointed by the Attorney General under any provision of law, may, when thereunto specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which district attorneys may be by law authorized to conduct, whether or not he or they be residents of the district in which such proceeding is brought."

General Motors claims that these methods do not afford it protection and that these remedies are illusory. It claims it will not be able to determine after the perjury investigation whether or not an abuse has in fact occurred. The court cannot pass judgment, at least at this juncture, whether or not the remedies suggested will afford General Motors complete relief. For even if these remedies are less than satisfactory, their inadequacy does not afford this court with a basis for intruding on a demonstrably proper grand jury investigation.

General Motors' motion to obtain the so-called Maneker affidavit, or in the alternative, to have it expunged, is denied. General Motors' motion for the protective order is denied in all respects.