### In re BORNN HAT CO.

(Circuit Court, S. D. New York. January 12, 1911.)

1. GRAND JURY (§ 36*)—SUBPŒNA DUCES TECUM—CORPORATIONS.

A subpœna duces tecum may issue against a corporation requiring it to appear before a grand jury and produce books and papers for examination.

[Ed. Note.—For other cases, see Grand Jury, Dec. Dig. § 36.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2.** WITNESSES (§ 293*)—PRIVILEGE—CORPORATION—"PERSON."

A corporation is not a "person" within the fifth amendment of the federal Constitution, providing that no person shall be compelled in any criminal case to be a witness against himself.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1012; Dec. Dig. § 293.*

For other definitions, see Words and Phrases, vol. 6, pp. 5322–5335; vol. 8, p. 7752.]

**3.** GRAND JURY (§ 25*)—POWERS—INQUISITION.

A federal grand jury has inquisitorial powers.

[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. § 62; Dec. Dig. § 25.*]

In the matter of the presentment against the Bornn Hat Company. Application for subpœna duces tecum to compel the corporation to bring its books and papers before a grand jury. Granted.

The grand jury is engaged in an inquiry into certain alleged violations of the customs laws of the United States by the Bornn Hat Company. The Bornn Hat Company is a New York corporation. A subpœna duces tecum has been duly issued, out of this court, addressed to the Bornn Hat Company, and has been duly served upon the corporation. This subpœna is as follows:

"The President of the United States of America to Bornn Hat Company, 22 West 4th Street, New York City—Greeting:

"We command you, that all business and excuses being laid aside, you appear and attend before the grand inquest of the body of the people of the United States of America for the Southern District of New York at a Circuit Court to be held at the United States Court House and Post Office Building, Room 119, fourth floor, in the borough of Manhattan, city of New York, in and for the said Southern District of New York, on the 5th day of January, 1911, at 11 o'clock in the forenoon of that day in a certain inquiry pending before the said grand inquest into alleged violations of the act of Congress of the United States approved August 5, 1909, entitled 'An act to provide revenue.' etc., by the Bornn Hat Company, and that you produce at the time and place aforesaid: The books of account, records and writings of every kind whatsoever, containing entries of all transactions had between Bornn Hat Company and F. E. Helguero, and all letters, invoices, bills, accounts and writings of every kind whatsoever relating to transactions had between Bornn Hat Company and F. E. Helguero and between Bornn Hat Company and Frederick Probst & Company now in your custody, and for a failure to obey you will be deemed guilty of a contempt of court and also liable to pay all loss and damages sustained thereby to the party aggrieved.

"Witness the Hon. Edward D. White, Chief Justice of the United States at the Borough of Manhattan in the City of New York, in the Southern District of New York, on the 3d day of January, 1911.

"[Signed] John A. Shields, Clerk.

"[Signed] Henry A. Wise, United States Attorney."

Upon the return day of this subpœna—which contains no ad testificandum —the corporation, in response to the call of the subpœna by the marshal in attendance upon the grand jury, appeared by its president, who presented himself before the grand jury and stated that he had with him the books and papers called for by the subpœna. He personally demanded to be sworn, and thereupon was informed that no subpœna commanding his appearance had been issued, and that his evidence was not wanted, and his demand to be sworn was not complied with. Thereupon he filed with the grand jury a written statement addressed to the grand jury and signed "Bornn Hat Company." This statement raises the following points: (1) That no validly instituted proceeding was pending. (2) That to compel the Bornn Hat Company to produce writings in a criminal proceeding against itself was in violation of the fourth and fifth amendments to the Constitution of the United

States, in that the proceeding amounted to an unreasonable search and seizure and compelled the corporation to bear witness against itself. (3) That there is no authority for directing a subpœna to a corporation. At the same time the president of the corporation filed with the grand jury a further paper on his own behalf, in which he refused to permit the books and papers called for "to be used in evidence or to be inspected," stating as his reasons for such refusal "that the introduction of the said books in evidence before the grand jury might tend to incriminate me, and that it would violate my rights under the fourth and fifth amendment to the Constitution of the United States. * * *" Thereupon the grand jury came into court and presented the Bornn Hat Company, as for contempt of court in failing to deliver up the books and papers called for by the subpœna. The presentment was traversed by the Bornn Hat Company.

Mr. Levy, for the United States.
Abram I. Elkus and Joseph M. Proskauer, for defendant.

HAND, District Judge (after stating the facts as above). The only precedent for the subpœna is In re American Sugar Refining Company (C. C.) 178 Fed. 109, and Wigmore, vol. 5, p. 219, § 2200. It is quite true that Wigmore's method is somewhat different, but it is a stronger exercise of power than the present subpœna and less in accordance with past analogies. The question of what sanction the court can apply is not up at present. No good reason exists why subpœna duces tecum should not lie against a fictitious being which is subject to subpœna ad respondendum, and to a writ of sequestration. Some archaic procedure may perhaps have to be revived; but the law has an adequate arsenal, if the corporate entity be contumacious, even though no individual aid the contempt affirmatively.

The more substantial question is of the right against self-incrimination. Whatever be the necessity to the decision of that part of the opinion of Mr. Justice Brown in Hale v. Henkel, 201 U. S. 43, contained on pages 74 and 75, 26 Sup. Ct. 370, 50 L. Ed. 652, I do not feel at liberty to disregard the language there used. The opinion was of a majority of the court, and the two concurring opinions did not question that corporations were not within the fifth amendment. Moreover, the dissenting opinion concerned itself expressly and solely with that point. It is quite plain that whether or not a Circuit Court has ever the right to disregard expressions found in the prevailing opinions of the Supreme Court, because they are not necessary to the decision, this is not such a case. The expression in question was certainly deliberate, and as such no lower court should disregard it even if unnecessary. The respondent insists that by a long series of precedents corporations are persons within the bill of rights, and that, at least if a part of the "people" to be protected by the fourth amendment, they are "persons" within the fifth. Those are considerations solely for the Supreme Court; they do not concern a judge of first instance.

No question is made of the sufficiency of the subpœna, i. e., of its too great generality. The defendant Bornn had no right to be sworn; any one could produce the books, and it need not be he; his privilege is not the corporation's, and may be disregarded when the question is merely of the production of the books.

The result is, of course, to give the grand jury inquisitorial powers. Its temporary constitution and its popular character must be the guaranty against their abuse. Had our law in fact evolved into the form which once seemed likely, the privilege would have existed only against mere executive inquisition, without prior charge or presentment by which the inquiry could be limited and abuse avoided. But it did not so develop. The privilege against "ex officio" oaths merged into the larger privilege in all tribunals which we know to-day. Wigmore, § 2250. It is either absolute or it is nothing, and, as the grand jury is given general powers of inquisition, such powers must have their proper scope wherever the privilege in its extreme form does not exist. If evils arise from this, we have perhaps to thank those tyrants who made detestable even the legitimate powers of the crown to inquire into the commission of crime, and so thwarted a development to which we seemed likely to become entitled.

Therefore I must direct the corporation to produce the books for the inspection of the grand jury within 10 days under a penalty of $500.