NORCROSS v. UNITED STATES (two cases).†

WESTERN FUEL CO. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. November 20, 1913.)

Nos. 2,329; 2,328; 2,327.

GRAND JURY (§ 36*)—WITNESSES (§ 16*)—SUBPŒNA DUCES TECUM.

A subpœna duces tecum to the secretary of a corporation, requiring him to produce before a grand jury the books and records of the company relating to certain matters stated, is not invalid because it contains no ad testificandum clause nor because there is no pending charge before the grand jury against the corporation or any of its officers or stockholders.

[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. §§ 75–78; Dec. Dig. § 36;* Witnesses, Cent. Dig. §§ 19–27; Dec. Dig. § 16.*]

In Error to and on Appeal from the District Court of the United States for the First Division of the Northern District of California; M. T. Dooling, Judge.

Writs of error by David C. Norcross and the Western Fuel Company to review a judgment adjudging said Norcross guilty of contempt, for disobedience of a subpœna duces tecum requiring him to produce books of the fuel company before the grand jury. Affirmed.

The following is the statement of facts and opinion of Dooling, District Judge, in the trial court:

A subpœna duces tecum having been issued by the clerk of the court directed to D. C. Norcross, secretary of the Western Fuel Company, a corporation, and to the company itself, requiring the production before the grand jury of practically all of the books and records of the company which would show the amount of coal imported by it, and the amount sold by it and to whom, the said Norcross, for himself and for said company appeared before the grand jury, and refused to produce the books and documents called for, basing his refusal upon the following grounds:

1. That said subpœna had been issued irregularly and without authority, in that no order of court was ever made directing it to issue.

2. That no proceeding or charge was pending before said grand jury.

3. That said subpœna did not state that there was any charge, matter, or proceeding pending before said grand jury.

4. That certain officers of the said company were under indictment, the date set for their trial was almost at hand, and they needed the books and documents in the preparation of their defense.

5. That the books and documents were not desired by the grand jury in any investigation, which it was then pursuing, but were desired by the assistants to the Attorney General for the purpose of securing evidence against the indicted officials in support of the indictments already found.

6. That the subpœna was of such a sweeping character as to amount to an unreasonable search and seizure.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied March 10, 1914.

The fact of such refusal having been presented to the court, by the grand jury, and a citation having issued directed to said Norcross and said company to show cause why they should not be punished for contempt, the foregoing reasons were by them urged in court in response to such citation, and the matter submitted.

The court thereafter rendered the following decision upon the questions involved:

In this matter my conclusions, briefly stated, are as follows:

1. No order of court is required, either by statute or by the practice in this district as a prerequisite to the valid issuance by the clerk of a subpœna duces tecum to compel the attendance of a witness before the grand jury.

2. No formal or other charge need be pending before the grand jury to warrant the examination of witnesses by such grand jury. But the grand jury has the power and it is its duty to conduct investigations, either upon its own motion, or upon the initiative of the United States attorney, to ascertain whether a crime cognizable by the court has been committed.

3. This power should not be used for the purpose of securing evidence against defendants under indictment in support of the indictments already found.

4. If the grand jury so desire, it may decline to proceed unless informed by the United States attorney of the purpose for which a witness has been called; but, if the jury be content to let the attorney develop the matter from the witnesses as they are called without being previously advised as to the purpose in view or the matter to be investigated, the witness is in no way injured thereby and may not refuse to answer because of such fact.

5. A witness before the grand jury may properly decline to answer any question, the answer to which would have a tendency to convict him of a felony; but it would seriously affect the efficiency of the jury, and cripple its power of investigating offenses, to hold that each witness may decline to answer until informed of the purpose of the investigation and the name of the individual against whom information is sought.

6. In the present case the presentments state that respondent D. C. Norcross, as secretary of the Western Fuel Company, a corporation, was duly sworn by the foreman of the grand jury to testify as a witness in an investigation then being pursued by said grand jury concerning certain frauds alleged to have been perpetrated and committed by said Western Fuel Company against the United States. And the assistant to the Attorney General in open court made the following statements: "But I will state in good faith to counsel that there are other parties involved in these frauds who have not yet been indicted. And I will state that it is the intention of the government to ascertain to what extent these other parties have been involved, and if their action is criminal then the government will take such course as it deems proper in the premises." This statement of counsel, while not under oath, may, it seems to me, be considered by the court in passing upon the good faith of the assistants to the Attorney General and of the grand jury in calling the witness Norcross and in demanding the documents called for by the subpœna. And while the court would not come to the assistance of the grand jury if it appeared that its purpose was only to secure evidence against defendants already indicted, it should assist the grand jury in every way to discover other offenders.

7. Therefore the only serious question which presents itself is as to whether the subpœna which respondents have refused to obey is too sweeping in its demands. It is quite true that its requirements are very broad, but it seems to me that the power of the grand jury must be commensurate with the requirements of the matter under investigation. And I am not prepared to say that the documents desired are not essential for the purpose for which they are sought; that is, an investigation as to the complicity of others in frauds alleged to have been committed against the United States. That the documents are numerous, and their production would be inconvenient, cannot be urged as a reason for refusing to produce them, if they be essential to the investigation proposed, and are sought in good faith.

8. My conclusion is that under the principles laid down in Hale v. Henkel,

201 U. S. 43, 26 Sup. Ct. 370, 50 L. Ed. 652, Wilson v. U. S., 221 U. S. 361, 31 Sup. Ct. 538, 55 L. Ed. 771, Ann. Cas. 1912D, 558, and later cases following them, the respondents should be required by the court to produce before the grand jury the documents as commanded by the subpœna duces tecum, and that a failure to do so should be punished as a contempt of the court.

Such will be the order.

Samuel Knight and Stanley Moore, both of San Francisco, Cal., for appellant and plaintiff in error.

Matthew I. Sullivan and Theodore J. Roche, Sp. Asst. U. S. Attys., both of San Francisco, Cal.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

ROSS, Circuit Judge. These cases were argued and submitted together. All of them depend upon the same facts, concerning which there is no substantial dispute; indeed, most of the facts are expressly agreed to. Norcross was at the times mentioned in the record, and still is, secretary of the Western Fuel Company, a corporation, and as such was and is in possession of all of the records, books, and papers of that company which were not destroyed by the great fire in San Francisco of April 18, 1906.

The record shows that at the November, 1912, term of the court below, two indictments were presented and filed against certain named individuals charging them with having entered into a certain conspiracy with divers other persons whose names were unknown to the grand jurors, "under the guise and name" of the said Western Fuel Company, to defraud the United States out of a large part of the import duties on coal imported and brought into this country by the fuel company directly and through other persons, firms, and corporations, by making and causing to be made false weights and false and fraudulent returns of weights of such importations, and in various other ways specifically set out in the indictments, the first of which charged the conspiracy to have been formed on the 1st day of January, 1904, the second charged it to have been formed on the 1st day of April, 1906, and a third and last indictment against the same defendants charged, in a somewhat altered form, the same conspiracy, alleging it to have been formed on the 1st day of April, 1906.

It appears from the record that the trial of the defendants on one of the indictments was first set for August 26, 1913, which time of trial was subsequently several times postponed, and that on the 14th day of August, 1913, the government's attorney procured to be issued out of the trial court a subpœna duces tecum in the words and figures following:

"The President of the United States of America, to D. C. Norcross, as Secretary of the Western Fuel Company, a Corporation, Greeting:

"We command you, that all business and excuses being laid aside, you appear before the grand jury of the United States of America, within and for the Northern district of California, at a district court to be held in the United States courthouse, in the Post Office Building, in the city and county of San Francisco, on the 14th day of August, 1913, at 2 o'clock in the afternoon, and that you produce before the said grand jury at the time and place aforesaid the following:

"All books, papers, records and vouchers of the Western Fuel Company, a corporation, in your possession or under your control, showing the amount and weight of coal in the bunker of the Western Fuel Company situate on Folsom Street Dock in the city and county of San Francisco on the 1st day of January, 1904, including the amount of coal in the off-shore bunker and the amount of coal in the in-shore bunker, and also showing the amount and weight of coal on the 1st day of January, 1904, in the coalyard of said Western Fuel Company connected with said bunker by a tramway and situate on East street, in said city and county of San Francisco; and also showing the amount and weight of all coal in all other bunkers and places containing, or which contained coal of the Western Fuel Company on the 1st day of January, 1904, in the state of California.

"Also all books, papers, records and vouchers of said Western Fuel Company, in your possession or under your control, showing the total amount and weight of coal delivered from said bunker, including the off-shore bunker and the in-shore bunker and delivered from said yard, between the 1st day of January, 1904, and the date hereof.

"Also all books, papers, records and vouchers of said Western Fuel Company, in your possession or under your control, showing the amount and weight of coal on this date in said bunker of said Western Fuel Company, including said off-shore and said in-shore bunker, and in said yard.

"Also all books, papers, records and vouchers of the Western Fuel Company, a corporation, in your possession or under your control showing the amount and weight of coal in the bunker of the Western Fuel Company, situate on said Folsom Street Dock, on the 1st day of May, 1906, including the amount of coal in the off-shore bunker and the amount of coal in the in-shore bunker; and also showing the amount and weight of coal on the 1st day of May, 1906, in said coalyard of said Western Fuel Company, and also showing the amount and weight of all coal in all other bunkers and places in the state of California containing or which contained coal of the Western Fuel Company on the 1st day of May, 1906.

"Also all books, papers, records and vouchers of said Western Fuel Company, in your possession or under your control, showing the total amount and weight of coal delivered from said bunker, including the off-shore bunker and the in-shore bunker, and delivered from said yard, between the 1st day of May, 1906, and the date hereof; also showing all coal delivered from any and all other bunkers and places containing, or which contained coal of the Western Fuel Company between the 1st day of January, 1904, and the date hereof, and also between the 1st day of May, 1906, and the date hereof.

"Also all books, papers, records and documents of said Western Fuel Company, a corporation, in your possession or under your control showing the weight of each load of coal taken from said in-shore and said off-shore bunker and out of said yard, and out of all other bunkers and places containing, or which contained coal of said Western Fuel Company, between the 1st day of January, 1904, and the date hereof; also showing the name of the person or persons to whom each of said loads of coal was sold or delivered, the date or dates upon which each of said loads of coal was so sold or delivered, and the amount charged to the person or persons to whom each of said loads of coal was so sold or delivered, and the amount paid for each of said loads of coal so sold or delivered.

"Also all weekly, monthly, and yearly financial and other reports made to the directors of the Western Fuel Company, showing the financial condition of the affairs of said company; also the minute books of said company containing the minutes of the meetings of the Directors and the minutes of the meetings of the stockholders of said company between the 1st day of January, 1904, and the date hereof.

"Also all stock ledgers, stock journals and stock certificate books showing the names of the various holders of shares of the capital stock of said Western Fuel Company on the 1st day of January, 1904, and at all times between January 1, 1904, and the date hereof.

"Also all ledgers, cashbooks and papers showing the expenses incurred and paid out by said Western Fuel Company between the 1st day of January, 1904, and the date hereof, and to whom said payments were made.

"Witness the Honorable Wm. C. Van Fleet, Judge of said District Court for the Northern District of California, this 14th day of August, in the year of our Lord one thousand nine hundred and thirteen.

"[Seal.]            W. B. Maling, Clerk,

"By Lyle S. Morris, Deputy Clerk."

It will be observed that the subpœna did not contain the usual ad testificandum clause.

The record shows that pursuant to the subpœna Norcross appeared before the grand jury at the time specified therein, and then and there read the following paper:

"I have been instructed by counsel that I am not obliged under this subpœna to testify before the grand jury or to produce the books and papers of the Western Fuel Company. accordingly, and without any disrespect to the grand jury, I must decline to testify further or to produce the books and papers until the court has passed upon the matter."

Such refusal having been duly reported to the court by the grand jury, Norcross was cited to show cause why he should not be adjudged guilty of contempt of court, and in response to that citation appeared with counsel, and, the matter having been duly heard upon evidence, the court entered an order directing him, as secretary of the corporation mentioned, to produce before the said grand jury at a designated time and place the books, papers, records, vouchers, and documents described and referred to in the subpœna and so in his possession and under his control, and, the said Norcross having failed and refused to comply with the said last-mentioned order, the matter was again brought before the court, and, having been heard upon a practical agreement in respect to the facts, the court adjudged him guilty and sentenced him to imprisonment until he should conform to the requirements of the subpœna, from which judgment the present appeal comes; and upon stipulation of the respective parties the writs of error are made to depend upon the disposition of the appeal.

The record shows, among other things, that at the last hearing mentioned it was agreed between counsel that at the time Norcross was by the subpœna required to appear there were no proceedings pending before the grand jury against any of the defendants to the indictments looking to their further indictment, nor was there any statement made by the government's attorney to the grand jury to the effect that:

"The government desired the grand jury to take up or consider an investigation having in view the presentation of further indictments as against these defendants or any other individuals connected with the Western Fuel Company."

Upon careful consideration, we are of the opinion that the case is ruled by the decisions of the Supreme Court in the cases of Wilson v. United States, 221 U. S. 361, 31 Sup. Ct. 538, 55 L. Ed. 771, Ann. Cas. 1912D, 558; Warren B. Wheeler v. United States (No. 658); Stillman Shaw v. United States (No. 659); Warren B. Wheeler v. Guy Murchie, U. S. Marshal, etc. (No. 660); Stillman Shaw v. Guy Murchie, U. S. Marshal, etc. (No. 661) 226 U. S. 478, 33 Sup. Ct. 158, 57 L. Ed. 309, decided January 6, 1913; and Walter.B. Grant and E. E.

209 F.—2

Burlingame v. United States (No. 831) 227 U. S. 74, 33 Sup. Ct. 190, 57 L. Ed. 423, decided January 20, 1913—upon the authority of which cases the judgment is affirmed.