## UNITED STATES v. INVADER OIL CORPORATION et al.

(District Court, S. D. California, S. D. April 28, 1925.)

1. **Grand Jury** ⬅➡36—Searches and seizures ⬅➡7—Issuance of subpœnas duces tecum to persons in charge of organizations being investigated for violating postal laws held proper.

Where post office inspectors had made reports that persons in control of certain organizations were probably violating the postal laws by reason of fraudulent practices, the government, having elected to bring such prosecutions as the evidence to be developed might warrant in certain district, could cause clerk of court of such district to issue subpœnas duces tecum, requiring such persons to appear before the grand jury and produce their records, though grand jury had not entered on investigation of specific charge, such subpœnas not constituting a violation of Const. Amends. 4, 5.

2. **Grand jury** ⬅➡26—Duty to make investigations stated.

It is the duty of the grand jury to make investigations, where that arm of the government charged with the duty of conducting criminal prosecutions presents evidence to it under the belief, based on reasonable grounds, that the criminal laws have been violated.

3. **Evidence** ⬅➡82—Grand jury presumed to act in accordance with law.

It will be assumed, on motion to quash subpœnas duces tecum, that the grand jury will not act other than as the law prescribes and permits.

**4. Grand jury ⬳➾36—Keepers of records of trust organizations could be required by subpœnas duces tecum to produce records before grand jury.**

Keepers of records of trust organizations, having interests offered as investment opportunities to the public, could be required by subpœnas duces tecum to produce records for investigation before grand jury.

**5. Joint-stock companies and business trusts ⬳➾10—Keepers of records of trust organizations may be compelled to permit holders of shares to examine records, though trust instrument does not concede right.**

Keepers of records of trust organizations, having share interests offered as investment opportunities to public, may be compelled by law to permit holders of shares to examine records, though trust instrument does not concede the right.

In Equity. On motion of the Invader Oil Corporation and others to quash subpœnas duces tecum issued by Clerk of District Court, requiring movants to appear before the grand jury and produce their records. Motion denied.

Samuel W McNabb, U. S. Atty., and J. Edwin Simpson, Asst. U. S. Atty., both of Los Angeles, Cal.

W. I. Gilbert, of Los Angeles, Cal., for respondents.

JAMES, District Judge. Subpœnas duces tecum were heretofore issued by the clerk of this court, requiring the respondents named in the above title to appear before the grand jury in session at the present term and produce their records. All of the respondents except Owenwood Pool No. 3 are resident in the state of Oklahoma. Owenwood Pool No. 3 is a resident of the state of Texas. Respondents have appeared and moved to quash the subpœnas. This particular form of attack is not so expressed in the case of the Oklahoma respondents, but the name given it is not important. The objections mainly urged have to do with constitutional rights of respondents as they are reserved in the Fourth and Fifth Amendments.

[1-3] In terms the subpœnas are broad enough to require the production of all of the records having to do with the business of respondents. The demand is, without question, as respondents' counsel have termed it, "most broad and sweeping." As to whether, in view of the facts as presented by the government, that demand so exceeds the limits of proper investigation as to amount to unreasonable search, may be first considered. That question is always a judicial one. The government has shown, by affidavits of post office inspectors, that matters were reported which gave notice to the department to which they belong that probable violations of the postal laws had been committed by reason of fraudulent practices of the management in control of all respondent organizations; that searches and examination of the records of the Oklahoma organizations and of that at Fort Worth, Tex., had been partially made, the most of it by force of a subpœna issued out of the federal courts and stipulations following the issuance thereof; that the entire number of respondents were constituted under one general control, represented by the corporate organizations named and the Owenwood Oil Corporation of Texas; that the syndicates and the pool referred to were subsidiaries; that a complete examination of all of the records of the organizations was not permitted to be had, and that the inspectors and auditors were obstructed in their efforts to obtain access to all of such records, some of them being withheld because of the claim, technically made, that they were not designated in the subpœna; that the subpœnas both in Texas and Oklahoma were finally vacated at the instance of the government; that, having elected to bring such prosecutions as the evidence to be developed might warrant in the District Court of the Southern District of California, the subpœnas were caused to be issued here. The fact further is claimed, and the affidavits tend to so show it, that the transactions of the respondent corporate organizations are so intermingled and concerned with the operations of the subsidiaries that the true conditions respecting the alleged fraudulent transactions are not reflected by the records of such corporate organizations. No effectual denial is submitted as to the facts just summarized; and even though that matter stood upon a conflict in the showing as between the government and respondents, the conflict would not be here resolved, so as to interfere with the proper investigation and prosecution of offenses under the criminal statutes.

It is the duty of the grand jury to make investigations, where that arm of the government charged with the duty of conducting criminal prosecutions presents evidence to it under the belief, based upon reasonable grounds, that the criminal laws have been violated. Necessarily it is the grand jury that is acting, and a subpœna can only have the effect of requiring the production before that body of witnesses and documents. There is no authority in the court to direct that exhibits be delivered to investigators, although

the grand jury, having before it a witness suitably qualified, may cause such witness to make his examination and report the facts; all the while the custody of the records so produced being that of the grand jury. Being apprised fully of its rights and duties, it will be assumed here that the grand jury will not act other than as the law prescribes and permits.

That the grand jury has not entered upon the investigation of some particular and specific charge affords no reason for holding that a subpœna requiring a witness to give testimony generally in behalf of the government should be quashed. Wilson v. U. S., 221 U. S. 361, 31 S. Ct. 538, 55 L. Ed. 771, Ann. Cas. 1912D, 558. In Wheeler v. U. S., 226 U. S. 478, 33 S. Ct. 158, 57 L. Ed. 309, the court considered a case where the subpœna called for "all the cashbooks, ledgers, journals, and other books of account * * *, and all copies of letters and telegrams of Wheeler & Shaw, Incorporated." The grand jury was there investigating whether Wheeler and Shaw had, by means of the corporation, used the mails to defraud. The claim that the subpœna was too broad, and that Wheeler, if required to produce the books and documents, would be denied his constitutional right not to furnish evidence against himself under compulsion, was rejected.

In Norcross v. U. S., 209 F. 13, 126 C. C. A. 155 (9th Cir.), contentions almost identical with those here were made under similar facts. Among the objections urged was one now emphasized—that the documents were wanted primarily for examination by postal inspectors and not by the grand jury. The court held that the respondent was properly adjudged in contempt for refusing to obey the subpœna.

In the Wilson Case, 221 U. S. 361, 31 S. Ct. 538, 55 L. Ed. 771, Ann. Cas. 1912D, 558, the right of an individual not to be compelled to give evidence implicating him in a criminal act was fully recognized, but it was pointed out that the production of books of a corporation by an individual in his representative capacity as an officer constituted no invasion of that right. The witness would be compelled to produce the records, but could stop short of giving any oral testimony as to entries made by him, or other acts in connection therewith, which might show his own crime. The court tested the question by declaring: "But the physical custody of incriminating documents does not of itself protect the custodian against their compulsory production. The question still remains with respect to the nature of the documents and the capacity in which they are held. It may yet appear that they are of a character which subjects them to the scrutiny demanded and that *the custodian has voluntarily assumed a duty which overrides his claim of privilege"*—cited also in Essgee v. U. S., 262 U. S. 151, 43 S. Ct. 514, 67 L. Ed. 917.

[4, 5] And the particular form of the organization, as being incorporated or not, seems to furnish no reason for extending the privilege of the record keeper. It is claimed that the syndicates named and Owenwood Pool No. 3 are trust organizations of a private nature. It fairly appears that these trusts have share interests (whether so called or not) which are offered as investment opportunities to the public. Except that a single trustee is vested with great powers, and is made practically immune from any right in the investors to have his disposition of their property questioned during a term of 20 years, the organizations are in their nature commercial associations. The trust instrument does concede the right, which the law would compel in any event, to the investors to examine the records. As such associations, subsidiary to and operated apparently under the controlling genius of the companies corporate, it ought not to be considered that these records are beyond the reach of compulsory examination by the grand jury.

I am of the opinion that the command of the subpœnas should be obeyed. Under the oral evidence heard, and the matters shown by affidavit, all of the records called for may be reasonably necessary in order to enable the jury, or its experts, to uncover the suspected fraudulent acts. In that case the demand is not too sweeping. From what has been said, it also follows that no right of any of the respondents, secured to them by the Fifth Amendment, will be infringed.

The motion to quash the subpœnas, on all of the grounds stated, is overruled. Respondents are required to be and appear before the grand jury in the Federal Building in Los Angeles at the session of said jury to be held on May 1, 1925, there to render obedience to the subpœnas in all things as required, with leave, nevertheless, to apply for a modification of this order, in the event that a binding stipulation is entered into, assuring to the government a full inspection and examination of all of the books and records required to be produced, at the places where such records are kept. All legal exceptions are allowed to this order.