## In re MOTIONS TO QUASH SUBPŒNAS DUCES TECUM RETURNABLE BEFORE THE SECOND GRAND JURY.

District Court, S. D. California, Central Division.

Aug. 29, 1939.

M. S. Huberman, Joseph E. Brill, Henry McClernan, Robert H. Marquis, and Laurence P. Sherfy, Sp. Assts. to Atty. Gen., for the United States.

Oscar Lawler, of Los Angeles, Cal., and Felix T. Smith, of San Francisco, Cal. (Pillsbury, Madison & Sutro, of San Francisco, Cal., and Lawler, Felix & Hall, of Los Angeles, Cal., of counsel), for G. M. Foster and Standard Oil Co. of California.

L. R. Martineau, Jr., and Warren Stratton, both of Los Angeles, Cal., for Cleve B. Bonner and Richfield Oil Corporation and Rio Grande Oil, Inc.

F. F. Thomas, Jr., and Wm. E. Wright, both of San Francisco, Cal., Harold A. Black, of Los Angeles, Cal., and McCutchen, Olney, Mannon & Greene, of San Francisco, Cal., for A. R. Bradley and Shell Oil Co., Inc.

Charles C. Stanley, J. A. McNair, and Hubert T. Morrow, all of Los Angeles, Cal., for E. B. Liles and The Texas Co.

Theodore J. Roche, of San Francisco, Cal., and Martin J. Weil, of Los Angeles, Cal., for D. W. Woods and General Petroleum Corporation of California.

Paul M. Gregg and L. A. Gibbons, both of Los Angeles, Cal., and Brobeck, Phleger & Harrison, of San Francisco, Cal., for W. R. Edwards and Union Oil Co. of California.

Robert M. Searls, William F. Kiessig, and William I. Robinson, all of San Francisco, Cal., for J. P. Edwards and Tide Water Associated Oil Co.

Salisbury, Robinson & Himrod, of Los Angeles, Cal., for Stuart M. Salisbury and Gilmore Oil Co.

Fred H. Schauer, Harrison Ryon, and Schauer, Ryon & McMahon, all of Santa Barbara, Cal., for G. C. Howell and Seaside Oil Co.

Harold Judson and Williamson, Hoge & Judson, all of Los Angeles, Cal., for H. J. March and Signal Oil Co.

McCORMICK, District Judge.

As I view the motions before the court, in the light of applicable decisions of the United States Supreme Court and of other appellate federal courts, the sole litigable issue at this time is whether or not, under the movants' chargeable knowledge of the scope of investigations by the Second Grand Jury, the documents called for are indicated to the corporate officers served with reasonable specification as to subjects and subject matter and are reasonably limited as to dates. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652; Nelson v. United States, 201 U.S. 92, 26 S.Ct. 358, 50 L.Ed. 673; Consolidated Rendering Co. v. Vermont, 207 U.S. 541, 28 S.Ct. 178, 52 L.Ed. 327, 12 Ann.Cas. 658; Wilson v. United States, 221 U.S. 361, 362, 31 S.Ct. 538, 55 L.Ed. 771, Ann.Cas.1912D, 558; Blair v. United States, 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979; Essgee Co. v. United States, 262 U.S. 151, 43 S.Ct. 514, 67 L.Ed. 917; Norcross v. United States, 9 Cir., 209 F. 13; Consolidated Mines v. Securities & Exchange Comm., 9 Cir., 97 F.2d 704; In re Black, 2 Cir., 47 F.2d 542.

The policy of the government in the investigation of alleged violation of anti-trust laws of the United States has been disclosed in an article by the present Assistant Attorney General, who has charge of such matters in the Department of Justice, in 47 Yale Law Journal (1303), where he stated: "I conceive of the duty of the Department of Justice both to the courts and to Congress. To the courts they owe the duty of fair and able presentation of the particular cases which they prosecute. To Congress they owe the duty of marking out an intelligible line of policy of law enforcement. No other department can possibly outline that duty for them in a field where rules of thumb are not possible. Therefore, acting under the advice of the Attorney General, I propose to announce in connection with particular cases or investigations which are instituted in the future enough information so that the exercise of the discretion in selecting the cases may be as consistent as public announcement and public criticism can make it."

This governmental policy relating to restraint of trade was followed prior to the impanelment of the Second Grand Jury in this division of the court, when, in a press release by the Department of Justice on May 1, 1939, it was stated:

"The Department of Justice will begin in the near future an inquiry before a Federal grand jury in the Southern District of California with reference to alleged monopolistic practices by oil companies in the Pacific Coast Area in the distribution of petroleum products. This statement is issued in accordance with the established policy of the Department to make public its reasons for instituting such an inquiry.

"The major oil companies produce 84% of the gasoline refined and distribute 85% of the gasoline marketed in the Pacific Coast Area. In 1936 the price of gasoline rose sharply throughout the Pacific Coast Area, and it has since exhibited a stability without precedent in the area. By reason of two price advances in April, 1936, the majors' retail price for third structure gasoline in Los Angeles went from 7-1/2¢ to 12¢ per gallon, exclusive of taxes; on first and second structure gasoline the advance was 4¢ a gallon. At the same time prices on all three grades were raised 4-1/2¢ throughout the balance of the area. In March, 1937 the majors made an additional advance of 1/2¢ a gallon on all grades throughout the area. There have been no general reductions since April, 1936 in the majors' posted prices for gasoline.

"These price advances have made the practices in the Pacific Coast Area the subject of complaints and government investigations extending over a considerable period of time. The complaints have charged that by resort to various practices all substantial competition in the marketing of petroleum products is being eliminated. A comparatively small number of companies occupy such a predominant position in the Pacific Coast oil industry, that concerted action to restrict competition may easily place in the hands of a few companies the power to fix monopolistic prices. Under such circumstances and in view of the well known importance of petroleum products, it is the duty of the Department to exercise extreme vigilance and to take vigorous action whenever it appears that current practices definitely restricting competition may be the product of concerted action.

"An earlier investigation by the Department, following complaints of monopolistic practices, resulted in the entry of a consent decree on September, 15, 1930 against a number of the Pacific Coast oil companies. In 1936 the Federal Trade Commission at the request of the Attorney General inves-

tigated complaints charging that monopolistic practices similar to those which led to the 1930 decree were being resorted to. As a result of the facts reported by the Commission, the Department in November, 1937 undertook a comprehensive field investigation.

"The purpose of the inquiry before the grand jury is to present the facts obtained in the course of the investigations conducted by the Department and the Federal Trade Commission as well as such other facts as may appear to be pertinent, in order to ascertain whether prosecutions for violation of the antitrust laws should be had."

█ It is not claimed that the movants as responsible officers of the oil companies affected by the subpoenas duces tecum have not had knowledge of the activities of the government as published relating to the corporate business of their principals prior to and during the proceedings of the Second Grand Jury and of the problems of the petroleum industry with which the inquisitorial body is concerned, and the designation in the subpoenas of the documentary evidence required is, we think, adequate to enable the respective officers to respond to the process. The materiality of the evidence sought by the process is apparent from a consideration of the public announcement by the Department of Justice, the empanelment of the Second Grand Jury by the court, and the contents of the subpoenas. All such matters are so closely related to the business of movants that the parties served cannot fail to understand what evidence is desired.

█ It is undeniably true that the subpoena requires the production of a great mass of material. It imposes an unusual and severe burden. This is unavoidable, by reason of the magnitude of the enterprises that are the subject of the investigation and the ramifications and complexities of detail that normally occur in the operation of great industrial concerns. The reasonableness of the requirements of a subpoena duces tecum in a valid grand jury investigation under the laws of the United States is a concrete matter. Essgee Co. v. United States, supra. It depends upon the specific situation that is the subject of inquiry, having in mind at all times that in every bona fide investigation by a federal grand jury no unnecessary initiatory action should be judicially taken that is likely to impede investigation and obstruct the impartial administration of justice.

It was stated by the Special Assistant Attorney General in the argument of these motions that the record in this court shows "that some forty subpoenas, substantially similar in form and in content" to those here under attack "had issued out of this court, and that they met with compliance" by other operating oil companies and their officers, doing business within the Pacific Coast Territory. These statements were not challenged by counsel for the objecting companies and have not been refuted by any of the movant oil companies. We think that if other operating oil concerns have understood like process and have been able to identify and supply documentary material in their files and records similar to that required by the subpoenas under attack, there is good reason to feel that the movants can do likewise.

█ Affidavits that are uncontradicted have been filed by movants in support of objections to the subpoenas which show that different agencies of the government and one of the Special Assistant Attorneys General who is appearing before the present grand jury in the investigation of the petroleum industry in the Pacific Coast Area have been during the last two years examining into the affairs of the movant oil companies, and that much material and many documents have been voluntarily supplied and are now presumably available to the grand jury. It is claimed by the movants that material called for in the subpoenas has been already obtained in these previous contacts. Undoubtedly the grand jury is not required to accept such earlier furnished matter and is entitled to have produced before it competent fresh evidence. Application of Texas Co., D.C., 27 F.Supp. 847. Unless the grand jury deems such course necessary or pertinent to an adequate investigation or inquiry, duplication of work or production can be avoided and economy of time and resources, both public and private, preserved. The paramount and indispensable requirement is the production and consideration of evidence that is competent, credible, sufficient and satisfactory to the grand jury. We assume that the Department of Justice will conform to the method stated in the May 1, 1939, announcement for the presentation of facts to the grand jury.

The time specified in the subpoenas or in the order of the court made this day may

not be considered by the Grand Jury as sufficient to enable the person served to comply with the terms of the subpoena. In that event the time may be enlarged to meet unavoidable exigencies and the material ordered to be produced may be presented periodically and in such installments as not to unnecessarily impede the normal business of the oil companies or to inordinately congest the archives of the grand jury. Documents should not be unnecessarily retained, and should be guardedly and securely kept from outside contact with unauthorized sources, so that they may be seasonably returned intact to owners, unless otherwise ordered by the court. Such precautions, with the sanctity of the oath of grand jurors, and the attitudes of confidence and ethical suasion by government officers and agents, adequately safeguard all property rights of the movants.

Each motion to quash the subpoena duces tecum is denied, and the clerk will enter separate orders accordingly.