In re EASTMAN KODAK CO.

District Court, W. D. New York.

April 3, 1947.

KNIGHT, District Judge.

This is a motion made pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. following section 687, to quash and vacate a subpoena duces tecum commanding the Eastman Kodak Company to appear before it to testify and produce documents therein demanded. The motion is made upon the ground that the subpoena is so broad, sweeping, vague and indefinite that compliance therewith would be unreasonable and oppressive and that it constitutes an abuse of the process of this Court, an illegal search and seizure in violation of the Fourth Amendment to the Constitution of the United States and denial of due process of law in violation of the Fifth Amendment.

In support of the motion, the Eastman Kodak Company (hereinafter called Company) has submitted affidavits of the Secretary and Assistant Vice-President of the Company. No counter affidavits have been submitted. It is made to appear from the brief submitted on behalf of the government that said subpoena is issued in connection with an investigation of the Company and its subsidiaries and other persons or firms or corporations engaged or connected with the photographic industry as respects the violation of the Federal Anti-Trust Laws, Sherman Act, as amended, 15 U.S.C.A. §§ 1–7, 15 note, and a conspiracy to act in violation thereof. The government is not required to lay any specific charge against a corporation or individual before issuance of subpoena duces tecum. The fact that the grand jury has not entered upon investigation of some particular charge is not a sufficient reason for holding that the subpoena, such as here, should be quashed. "It is not necessary, as in the case of a warrant, that a specific charge or complaint of violation of law be pending or that the order be made pursuant to one. It is enough that the investigation be for a lawfully authorized purpose, within the power of Congress to command." Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 209, 66 S. Ct. 494, 505, 90 L.Ed. 614, 166 A.L.R. 531. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652; Wilson v. United States, 221

William M. Marvel, Sp. Asst. to the Atty. Gen., Wendell Berge, Asst. Atty. Gen., George L. Grobe, U. S. Atty., and R. Norman Kirchgraber, First Asst. U. S. Atty., both of Buffalo, N. Y., for the United States.

Donovan, Leisure, Newton, Lumbard & Irvine, William J. Donovan, all of New York City, Nixon, Hargrave, Middleton & Devans, and T. Carl Nixon, all of Rochester, N. Y., for Eastman Kodak Co.

U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771, Ann. Cas. 1912D, 558; Wheeler v. United States, 226 U.S. 478, 488, 33 S.Ct. 158, 57 L.Ed. 309; Essgee Co. of China v. United States, 262 U.S. 151, 43 S.Ct. 514, 67 L.Ed. 917; United States v. Invader Oil Co., D.C., 5 F.2d 715; In re National Window Glass Workers et al., D.C., 287 F. 219.

It is stated in the brief for the Company that the Company does not rely on the excessive burden which would be required in the examination of its records; that the reasonableness of the demands are not to be determined by the number of documents called for, their weight or the aggregate of their mass; but that the demands are unreasonable in scope and so oppressive because of the "all-inclusive and indefinite specifications" of the subpoena.

The subpoena was made returnable March 14, 1947, but by agreement of counsel the return date has been fixed as April 5, 1947.

The principal business of the Company is the manufacture and sale of photographic materials and the related chemicals. It has a most extensive business. It owns the majority of the stock of 30 domestic subsidiaries and, directly or indirectly, of 69 foreign subsidiary companies organized in 29 countries. The Company and its subsidiaries operate 10 manufacturing establishments and more than 300 offices in 254 cities in 41 countries.

The subpoena quite apparently would require the production of a vast number of documents of the Company and that the production of the documents sought would require the examination of documents of the Company numbering many thousands.

Upon the hearing on this motion, the government consented to limit the demand of the subpoena to documents and papers in the offices of the Eastman Kodak Company at Rochester, New York, its principal place of business. Since it is quite apparent that the files of the offices at the principal place of business of the Company normally would contain many papers and documents related to its subsidiaries and outside facilities, it seems doubtful whether the government's proposed limitation would amount to a very material concession.

Rule 17(c) provides that the Court on motion may quash or modify a subpoena for the production of "books, papers, documents or other objects designated therein." if compliance would be unreasonable or oppressive. The claim that the subpoena was issued in violation of the Fifth Amendment of the Constitution has not been pressed nor do we see how it could have any application herein. The Fourth Amendment of the Constitution purports to make the people secure "against unreasonable searches and seizures." A subpoena which is unreasonable and oppressive is violative of the Fourth Amendment. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746; Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652; Wheeler v. United States, 226 U.S. 478, 33 S.Ct. 158, 57 L.Ed. 309; Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A. 1915B, 834, Ann.Cas.1915C, 1177; Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614, 166 A.L.R. 531.

Obviously the court has the duty to see that its judicial processes are not abused. It has the power to prevent clear injustice or an abuse of judicial process. McKinney v. United States, 8 Cir., 199 F. 25; In re National Window Glass Workers, D.C.N.D.Ohio, 1922, 287 F. 219, page 225; Application of Texas Co., D.C., 27 F. Supp. 847; In re Grand Jury Investigation, D.C., 33 F.Supp. 367. So it is the duty of the Court to see that the process by subpoena, as here, is not unreasonable and oppressive. What constitutes an unreasonable and oppressive subpoena duces tecum naturally has had the consideration of the courts in many cases. There are certain similar considerations to be valuated in many of these cases, but each has had to be, as this is to be determined upon its own particular facts. "Each case must be judged according to the peculiar facts arising from the subpoena * * * and other proper sources." United States v. Medical Society, D.C., 26 F.Supp. 55, 57. All of the authorities given by the parties and others have been examined by the Court.

The two leading cases on the requirements of a subpoena duces tecum are Hale v. Henkel, supra, and Brown v. United

States, 276 U.S. 134, 48 S.Ct. 288, 72 L.Ed. 500. Both involved grand jury subpoenas in anti-trust investigations. The latter is distinquished from the former in respect to the period of time covered by the subpoena. These cases have been cited and distinguished in numerous opinions of the Court, but have not been overruled. They are authorities for the proposition that the documents called for must be specified with reasonable particularity and that the period covered must be reasonably limited. The subpoena in Hale v. Henkel required the production of [201 U.S. 43, 26 S.Ct. 380] "all understandings, contracts, or correspondence between the MacAndrews & Forbes Company, and no less than six different companies, as well as all reports made and accounts rendered by such companies from the date of the organization of the MacAndrews & Forbes Company, as well as all letters received by that company since its organization from more than a dozen different companies, situated in seven different states in the Union." The Court emphasized that production of the documents could "scarcely be more universal in its operation, or more completely put a stop to the business of that company." The Court also said: "A general subpoena of this description is equally indefensible as a search warrant would be if couched in similar terms."

Brown v. United States, supra, arose out of a conviction for contempt in the refusal of an officer of a volunteer organization to answer questions concerning matters set forth in the subpoena and declining to state his reasons for refusing. To the presentment Brown submitted an answer setting forth that that organization was not a corporation and it was a violation of his constitutional rights, that the subpoena was invalid in other respects. Among other things, it was claimed that the subpoena was too broad and indefinite. In that case the subpoena commanded the corporation to produce great number of documents relating to the manufacture and sale of goods [276 U.S. 134, 48 S.Ct. 288] "during the period from January 1, 1922, to June 15, 1925." Hale v. Henkel, supra, is distinguished in Brown v. United States, supra, by this statement: "The limitation in re-

spect of time embraced the entire period of the corporation's existence and there was no specification in respect of subject-matter; * * *. The subpoena here under consideration is very different. It specifies a reasonable period of time, and with reasonable particularity the subjects to which the documents called for relate. The question is ruled, not by Hale v. Henkel, but by Consolidated Rendering Co. v. Vermont, 207 U.S. 541, 553, 554, 28 S.Ct. 178, 52 L. Ed. 327, 12 Ann.Cas. 658, and Wheeler v. United States, 226 U.S. 478, 482, 483, 489, 33 S.Ct. 158, 57 L.Ed. 309." In the Brown case it did appear that prior to issue of subpoena in question he had produced the same documents before the grand jury, and the court said: "Having produced them once without difficulty and without undue interference with the affairs of the association, so far as appears, there is no reason why he should not produce them again in response to another subpoena identical in terms. * * * The probable materiality of the documents is sufficiently indicated by the description of their subject-matter * * * in the subpoena."

The Hale and Brown cases are cited with approval in the recent case of Oklahoma Press Publishing Co. v. Walling, supra. The Court there said [327 U.S. 186, 66 S.Ct. 506]: "* * * the requirement of reasonableness, including particularity in 'describing the place to be searched, and the persons or things to be seized,' also literally applicable to warrants, comes down to specification of the documents to be produced adequate, but not excessive, for the purposes of the relevant inquiry. Necessarily, as has been said, this cannot be reduced to formula; for relevancy and adequacy or excess in the breadth of the subpoena are matters variable in relation to the nature, purposes and scope of the inquiry."

What is reasonable is determined by no fixed standard, but by the circumstances shown in respect to each case. Designation of each particular paper which is desired is not required, but it must be described with reasonable detail in order to enable the production by the Company directed to produce it. "We see no reason why all such books, papers, and correspond-

ence which related to the subject of inquiry, and were described with reasonable detail, should not be called for and the company directed to produce them." Consolidated Rendering Co. v. Vermont, 207 U.S. 541, 28 S.Ct. 178, 182, 52 L.Ed. 327, 12 Ann.Cas. 658. In this particular type of investigation it must be seen that a wider range of inquiry is necessary than in the general run of criminal cases. In this particular instance it is obvious that it normally would be necessary to examine many documents of the Company.

The courts have been liberal in their allowances as respects the production of documents pursuant to subpoena directed to investigation before grand juries. Norcross v. United States, 9 Cir., 209 F. 13; United States v. Invader Oil Corp., D.C., 5 F.2d 715; Wilson v. United States, supra; Essgee Co. of China v. United States, 262 U.S. 151, 43 S.Ct. 514, 67 L.Ed. 917. The Supreme Court said of the grand jury: "It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime." Blair v. United States, 250 U.S. 273, 39 S.Ct. 468, 471, 63 L.Ed. 979.

In Norcross v. United States, supra, the subpoena directed the production of a great number of books, papers and records. In contempt proceedings one position taken by the defendant was that the subpoena was of such a sweeping character as to amount to an unreasonable search and seizure. The judgment adjudging the defendant in contempt for disobedience to the subpoena duces tecum was affirmed. The period covered was substantially 10 years. The District Judge in his opinion, among other things, said [209 F. 14]: "Therefore the only serious question which presents itself is as to whether the subpoena which respondents have refused to obey is too sweeping in its demands. It is quite true that its requirements are very broad, but it seems to me that the power of the grand jury must be commensurate with the requirements of the matter under investigation. * * * My conclusion is that under the principles laid down in Hale v. Henkel, * * * Wilson v. United States * * * and later cases following them, the respondents should be required by the court to produce before the grand jury the documents * * *."

In re Investigation Conducted by the Attorney General of United States ( in Re Cudahy Packing Co.), D.C., 27 F.Supp. 997; In re Grand Jury Investigation, D.C., 33 F.Supp. 367; In re Motion to Quash Subpoenas, etc., D.C., 30 F.Supp. 527; In re American Medical Assn., D.C., 26 F. Supp. 58; In the petition of Borden Company, a corporation et al., to quash certain subpoena duces tecum (decided by Judge Barnes, N.D. of Ill., E. Div.) 75 F.Supp. 857; United States v. Invader Oil Co., D.C., 5 F.2d 715; Brownson v. United States, 8 Cir., 32 F.2d 844; are all cases, in addition to others hereinbefore cited, in which the question of the validity of the subpoena duces tecum was considered, and in a number of these cases the facts are comparable to those presented here as respects a general description of the papers and documents sought to be procured. These cases support generally the breadth of the subpoena in suit. An important distinction, however, is found in these cases in that the period of coverage of the subpoena was for a comparatively few years. It is further to be noted with respect to the cases hereinbefore cited that in certain of these the subpoena was sustained in part and quashed in part.

In the recent proceeding, In the Matter of United Shoe Machinery Corp., et al., Movants, D.C.Mass. 6 F.R.D. 347, the facts were fairly comparable with those here, and the subpoena was quashed as too broad and sweeping in scope. In that case, however, the subpoena required the production of practically all the corporation's files for a period of 26 years. Bank of America Nat. Trust & Sav. Ass'n v. Douglas, 70 App.D.C. 221, 105 F.2d 100, 123 A.L.R. 1266, seems to have been decided on the ground that production of the documents in Washington was unreasonable and the documents were not sufficiently specified. In re American Sugar Refining Co., C.C., 178

F. 109, the period covered was at least 9 years and many demands were not specific. But see United States v. American Tobacco Co., C.C., 146 F. 557, opinion by same Judge.

The time covered by the subpoena must be reasonably limited and the subject matter of the documents called for must be specified with reasonable particularity. This subpoena reaches back 26 years in most instances and in some cases as far back as 1901—periods of 26 and 46 years, respectively. In justification for these long extended periods, it is the government's claim that the coverage time proposed is reasonable and necessary because of the previous record of the Company as an offender against the Anti Trust Laws. It does appear that on February 1, 1921, a Decree of Dissolution and Injunction was entered against this Company in an action brought for monopolization of the manufacture, sale and distribution of photographic supplies. The Decree of that date contained this clause "but nothing herein shall prevent the defendants, or either of them, from acquiring patents, processes, formulas, trade marks or retail stores or stockhouses dealing in photographic products for the development of its business in good faith, and not for the purpose of creating an unlawful monopoly." In 1926, 1929, 1935 supplemental Decrees were entered construing and modifying the Decree of February, 1921. The foregoing modifications were made at request of the Company. Further, the Federal Trade Commission heretofore prosecuted two Administrative proceedings against the Company for violation of Anti Trust Laws. One of these suits related to unfair methods of competitions against an association of manufacturers. This proceeding was instituted some time prior to 1925. The more recent violation involved the Miller-Tydings amendment to the Sherman Act, 15 U.S. C.A. § 1, and the question was whether color film products of the Company were in free and open competition with black and white film. It was held that the Company could not avail itself of the amendment. This arose about 1946.

We have heretofore pointed out that in certain of the foregoing cases the subpoena has been approved in part and quashed in part and in certain of these cases the provisions of particular paragraphs have been stricken or changed.

■ The subpoena is composed of 20 separately numbered paragraphs with numerous sub-paragraphs. Some of these are extremely broad and together call for the production of many thousands of papers and documents. Some are insufficiently described and the production would require an enormous amount of research by the Company and cast an unreasonable burden on it. But the fault in the foregoing respects does not condemn the entire subpoena. The good can be separated from the bad. The government has the authority to make its proposed investigation. We think the subpoena as hereinafter approved will be reasonable in its requirements, sufficiently specific and not unduly burdensome.

"A peculiarity of the subpoena 'duces tecum' is that, in the nature of things it must specify, with as much precision as is fair and feasible, the particular documents desired * * *." Wigmore on Evidence, Vol. 4, 2d Ed., sec. 2200 and 1934 supplement; see cases cited. But "The papers are required to be stated or specified only with that degree of certainty which is practicable, considering all the circumstances of the case * * *." United States v. Babcock, 1876, Fed.Cas.No. 14,484, 3 Dill 566, cited in Wigmore, supra. In re Bornn Hat Co., C.C., 184 F. 506; United States v. Terminal R. Ass'n, C.C., 154 F. 268. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319, 24 A.L.R. 1426, cited by the Company herein, has no application involving as it did the question of the use of documents illegally seized. Nor can we say that this investigation is a direct fishing expedition "into private papers on the possibility that they may disclose evidence of crime" as said in Federal Trade Comm. v. American Tobacco Co., 264 U.S. 298, 44 S.Ct. 336, 337, 68 L.Ed. 696, 32 A.L.R. 786.

■ We do not see why this subpoena should be allowed covering, as proposed, a period of at least 25 years. We do not think that prior actions and pro-

ceedings brought against the Company are sufficient justification for such coverage. There are certain demands in the subpoena, however, which we believe should be permitted to stand, covering a period of upwards of 10 years, but the most of the demands, it is believed, should be limited to a period of 10 years. Under usual circumstances we think the period of 10 years might seem too long. A 10-year period is longer than that allowed in numerous of the cases hereinbefore cited. Except as hereinafter indicated, the coverage should extend from January 1, 1937, to this date. A reason for this extended period is the fact that it includes the period of World War II during which the Company was engaged largely in the production of materials for use in connection with the war, and we well may say that during the period of this war the material claimed to be necessary to this investigation would probably be less than in other years. Further, it is seen that numerous of the documents sought in several of the demands for production date from a period from in or about 1937. The Company's Reply Memorandum says "Under the circumstances, an inquiry earlier than 1935 could not possibly be reasonably necessary." (p. 7)

We do not need to conclude the government entirely by this limitation. If it is made to appear to the Court during the investigation that it is essential that documents and papers of earlier dates be produced to connect up the investigation, an application for an additional subpoena may be made. It was said in Bank of America Nat. Trust & Sav. Ass'n v. Douglas, supra, [70 App.D.C. 221, 105 F.2d 107] "Doubtless many, if not all, of these documents may ultimately be required * * *." So, here, it is quite possible these earlier papers and documents may be required.

We are of the opinion that certain parts of the subpoena should be quashed and others modified or amended as hereinafter indicated. We have carefully considered each demand in the subpoena, and a ruling as to each will be separately made. The Company does not particularly stress objections to Paragraphs 1–4 and 6–9 of the subpoena. It says "Such paragraphs as 5, 11, and 12 through 19 which constitute the heart of the subpoena * * *, are, however, treated (by movant) with a broad brush." (Reply Memorandum, p. 8) "These paragraphs (5, 11, 12, 13, 16, 17, 18, and 19) are the very essence of this subpoena." (Main Brief, p. 15)

The conclusions with reference to the various paragraphs are as follows:

Paragraph 1. Motion to quash denied. The demand is specific and reasonable. This paragraph is allowed though the coverage exceeds 10-year period.

Paragraph 2. Motion to quash denied. The demand is reasonable and specific. The coverage of years as therein included is allowed.

Paragraph 3. Motion to quash is denied. The demand is reasonable and the papers sought are sufficiently specified.

Paragraph 4. Allowed as covering only a period commencing January 1, 1937. Under this allowance the coverage period is for 2 years only but, as hereinbefore stated, necessity may later be shown for production of documents of an earlier date. Motion to quash denied.

Paragraph 5. Allowed, as covering only a period commencing January 1, 1937, and subject to modification as hereinafter indicated. This paragraph, as do the preceding ones, relates to the matter of market control. We do believe, as said by the Company, the subpoena should have stated more specifically the names of the manufacturer or manufacturers by whom any "actual or estimated volume of production" was sent. This part of the paragraph is too broad and places too much of a burden on the Company. While "photographic" material is a broad term, its meaning and inclusion must be well known to the Company.

Paragraph 6. Allowed. Motion to quash denied.

Paragraph 7. Allowed as covering only a period from January 1, 1937, through 1938. This allowance is subject to later showing of necessity of these reports etc. prior to 1937.

Paragraph 8. The materiality of this demand is not apparent at this time. Motion to quash granted.

Paragraph 9. Allowed. Motion to quash denied.

Paragraph 10. Allowed, as covering a period commencing January 1, 1937.

Paragraph 11. Allowed, except that coverage is limited to period commencing January 1, 1937, and except that the words "and notices of changes in published lists, discount schedules, terms of sale" are to be stricken as surplusage.

Paragraph 12. Allowed in so far as the demand is for written contracts and agreements only for the period commencing January 1, 1937, relating only to subdivisions (a), (d), (e), (f), (g), and (j). The other subdivisions are directed to be quashed, because they are too broad, and we think are largely covered by other paragraphs. In any event later production may be required upon making of proper proof. Further, the words "and all writings recording or reflecting oral or implied agreements, arrangements, or understandings" are too broad, too burdensome upon the Company and are too indefinite.

Paragraph 13. Allowed in so far only as the direction is made to the production of written contracts, agreements, conveyances, assignments and other written instruments referring or relating to the subjects stated in each section of the paragraph in so far as said subjects refer to any period from January 1, 1937; to the present date, or to any date intervening January 1, 1937, and the present. We think the earlier dates included in paragraph 13 are too remote, but the relevancy to the investigation may later be shown and process issued for the production of these. The paragraph is to be understood to be limited to the firms listed in the Appendix.

Paragraph 14. Allowed as to all assignments of patents therein stated which are not recorded in the Patent office. Some of these assignments are described as being dated long prior to January 1, 1937, but this paragraph should be answered in full. Motion to quash is denied.

Paragraph 15. Allowed in so far as the licenses granted to the Company and its subsidiaries, the cross licenses entered into by the Company and its subsidiaries, and the licenses granted by the Company and subsidiaries. to numerous companies or corporations set forth in Exhibit A, as part of the subpoena, bear date on or subsequent to January 1, 1937.

Paragraph 16. Allowed in so far as it relates to letters memoranda and reports. Subdivision (a) is quashed in so far as it directs the production of documents showing "implied agreements, arrangements, and understandings". Subdivision (b) is quashed. This seems sufficiently answered in paragraph 13. Subdivision (c) is quashed. The government should be in a position to procure the instruments referred to in this subdivision from the named departments and agencies named therein. Subdivision (d) allowed in so far as it refers to negotiation or the termination of certain patent assignments, licenses and agreements therein specified but only in so far as such assignments, licenses and agreements bear date from January 1, 1937.

Paragraph 17. Is limited in these respects:. to "All letters, * * * reports, * * * messages * * * of e v e r y kind sent or received by Eastman Kodak Company and subsidiaries, * * * to or from any of the persons, firms, associations, or corporations named in the Appendix to this subpoena," since January 1, 1937, that refer or relate to the subject matter of subdivisions (a), (e), (g), (h), (l), (m), (n), (o), (q), (s), (t).

Paragraph 18. Quashed. This paragraph calls for all types of memoranda, reports, communications etc. drawn up, transmitted or received by any number of names, directors, officers, and employees of the Company, which individuals are directors, officers, or employees is not shown. This paragraph calls for letters, memoranda, communications etc., referring or relating to any contracts, agreements and written instruments "or any of the oral or implied agreements, arrangements, and understandings specified in paragraphs 12, 13, 14, 15 of this subpoena, and in sub-paragraph d of paragraph 16 of this subpoena." Further, it calls for all such letters, memoranda, communications referring or relating to any subject matter

enumerated in many of the sub-paragraphs in paragraphs 12, 13 and 17. Again, it calls for this same matter referring or relating to sub-paragraph (c) of paragraph 16. This sub-paragraph (c) was disallowed for reasons hereinbefore stated.

The requirements of sub-paragraphs 18 (a) and (b) call for all inter-office communications, all minutes of the Company's subsidiaries relating to the subject matter enumerated in paragraphs 12, 13 and 17. Again, the documents sought by sub-paragraphs (a) and (b) of paragraph 18 are too broad and, as proposed, impose an unreasonable burden upon the Company. Investigation before the grand jury may develop the necessity of the production of any of the papers referred to in paragraph 18, and if so application can be made to the court for another subpoena.

Further, we should add that this paragraph includes a period from January 1, 1921, to date. This, as stated, is believed too long a period of coverage.

Paragraph 19. Allowed, except that documents to be produced shall be as of a date commencing January 1, 1937. This paragraph is far less broad than paragraph 18, and it is believed the government is entitled to production of the matters referred to in sub-paragraphs (a), (b) and (c). The matters to which this paragraph relates are largely the same as those referred to in sub-paragraphs (a), (b) and (c) of paragraph 18, but these papers or documents sought relate to actions by authorized groups of the Company rather than from individual officers, directors or employees whose authority is not shown.

Paragraph 20. Allowed in so far as it calls for copies of records, correspondence and writings called for by the subpoena as allowed herein.

■■■ It is understood that the application and operation of the subpoena to records and documents is to be limited to those of the Company in its possession or control at Rochester, New York.

■■■ It is further understood that the government will join in reasonable arrangements with respect to the time, order or manner of production of documents called for by the subpoena, and it is understood that measures shall be taken which are necessary to preserve from exposure documents containing military or naval information, if any, under security classification.

An order may be submitted in accord with this opinion.